Trustees of Presbyterian Board of Publication, etc., *v.* Gilliford *et al.*

No. 16,852.

TRUSTEES OF THE PRESBYTERIAN BOARD OF PUBLICATION
AND SABBATH-SCHOOL WORK *v.* GILLIFORD ET AL.

GUARANTY.— *When a Continuing One.*—G. and P. entered into the following guaranty: "We hereby jointly and severally guarantee to the Presbyterian Board of Publication payment for all sales which may be made by them to Rev. William A. Patton, but our liability on this guaranty not to exceed, in any event, $3,000."
*Held,* that the guaranty is a continuing one.

SAME.—*A Continuing One.*—*Limited Liability.*—A guaranty of payment for goods to be sold from time to time to an amount not exceeding a specified sum, is continuous until the sums remaining unpaid reach the designated limit, even though the aggregate of purchases far exceeds it; it being the extent of liability and not the extent of sales that is limited. Where the amount of the guarantor's liability is limited and the time is not, it will be held to be a continuing guaranty.

SAME.—*Additional Security.*—The fact that the obligee took additional security from the obligor did not lessen the obligation of the guarantors.

From the White Circuit Court.

*E. B. Sellers* and *W. E. Uhl,* for appellant.
*J. H. Gould* and *G. R. Eldridge,* for appellees.

HOWARD, J.—This was an action brought by the appellant upon a written guaranty, and to set aside an alleged fraudulent conveyance of real estate by one of the guarantors, also to subject the property so conveyed to the payment of appellant's debt.

In the amended complaint, it is alleged, among other things, that one William A. Patton obtained credit from the appellant in the purchase from time to time of such books, papers, periodicals and other publications as he might require, upon the following contract of guaranty entered into by the appellees George Gilliford and Joseph A. Patton, to wit:

"We hereby jointly and severally guarantee to the

Presbyterian Board of Publication payment for all sales which may be made by them to Rev. William A. Patton, but our liability on this guaranty not to exceed, in any event, $3,000.''

Numerous answers were filed to the complaint, all of which were afterwards withdrawn, except the following, being the eighth paragraph of the joint answer of said guarantors:

''For a further answer to the said amended complaint these defendants admit the execution of the said written guaranty mentioned in the complaint, but they aver that the said plaintiff, after the execution thereof, and during the years 1881 and 1882, on the faith of the said written guaranty and under and pursuant to the terms thereof, sold and delivered to the said William A. Patton books and other goods, wares and merchandise of the value of $3,000 and more, said sales being upon credit; that afterwards, in the year 1883, the said William A. Patton fully paid to the plaintiff all of said indebtedness for said sales; that by said sales as aforesaid made to the said William A. Patton in the years 1881 and 1882, these defendants became and were liable to the said plaintiff upon their written guaranty in the sum of $3,000, and upon the payment thereof by the said William A. Patton, as aforesaid, these defendants became, and were, discharged from said indebtedness, and released from any further liability on said written guaranty; and these defendants further aver that after the payment of said indebtedness as aforesaid, and during the years 1884, 1885, 1886, 1887, 1888 and 1889 the said plaintiff sold and delivered to the said William A. Patton other goods, wares and merchandise of the value of $8,000, of which these defendants had no notice or knowledge, prior to the commencement of this action, on the 12th day of November, 1890; that to secure the said plaintiff in the

sales thus made to the said William A. Patton in the years 1884, 1885, 1886, 1887, 1888 and 1889, the plaintiff, on the 4th day of June, 1888, required the said William A. Patton to insure his life in a life insurance company in the sum of $2,000, payable, after his death, to the said plaintiff, which the said William A. Patton did, and caused the said policy of insurance to be delivered to the plaintiff, and as a further security for said last named 'sales the said William A. Patton, his wife joining therein, on said 4th day of June, 1888, conveyed to the plaintiff certain real estate in the city of Indianapolis, of the value of $3,000; and these defendants aver that the said indebtedness of the said William A. Patton, mentioned in the complaint, is for said goods, wares and merchandise so, as aforesaid, sold and delivered by the plaintiff to the said William A. Patton during the said years 1884, 1885, 1886, 1887, 1888 and 1889, and not otherwise.

"And these defendants further aver that the said plaintiff still holds and possesses the said life insurance policy and the said real estate so, as aforesaid, given and conveyed to secure the said plaintiff for the said sales made during the years 1884, 1885, 1886, 1887, 1888 and 1889."

To this paragraph of answer a demurrer was overruled by the court, and this ruling presents the only question for our decision.

From the complaint and the answer it appears that immediately after the contract of guaranty the appellant, having notified the guarantors of its acceptance of the the guaranty, began selling to William A. Patton books, periodicals and other publications on credit, and continued so to deal with him until the year 1889, at which time there was a balance due appellant of about $1,600. The aggregate of sales amounted to something over $10,-

000, all of which was paid by William A. Patton except said balance, which remains unpaid, and for which suit was brought.

The question discussed on this appeal is as to the nature of the guaranty in suit.

Appellant contends that the guaranty is a continuing one, the guarantors being liable to the extent of three thousand dollars for any balance found due and unpaid by William A. Patton to appellant.

The appellees, on the contrary, contend that the instrument in suit is not a continuing guaranty, and that when goods to the amount of three thousand dollars had been sold on credit the guarantors were liable for all that remained due, and that when that was paid the guarantors were not further liable in any event.

In section 156 of his work on Suretyship and Guaranty, Mr. Brandt well says that "As the terms of guaranties, and the circumstances under which they are given, differ in almost every case, no definite rule for determining whether a guaranty shall be considered a continuing one or not can be given. The only way to illustrate the subject is to refer to facts of decided cases." Many such illustrations are given in the succeeding sections of that work, showing that the circumstances of the parties, as well as the words of the guaranty, are to be taken into consideration in determining whether the guaranty is continuing or noncontinuing as to amounts guaranteed, as to the time during which the guaranty shall remain good or as the extent of the liability of the guarantor.

In 9 Am. and Eng. Encyc. of Law, 77, the statement is made that "When by the terms of the guaranty it appears that the parties look to a future course of dealing for an indefinite time, or a succession of credits to be given, it is to be deemed a continuing guaranty, but

Trustees of Presbyterian Board of Publication, etc., v. Gilliford et al.

when no time is fixed upon and nothing in the agreement indicates a continuance of the undertaking, the presumption is in favor of a limited liability as to time.''

In the notes to the foregoing statement numerous authorities are cited, and many examples given of continuing and noncontinuing guaranties, amongst them the following:

"The bearer is going to start a peddling route to sell cigars and tobacco. He wishes to buy goods of your firm. We the undersigned will be his security to the amount of $1,000." Held to be continuing. *Sickle* v. *Marsh*, 44 How. Prac. (N. Y.) 91.

An agreement to be responsible for the payment of all future bills or indebtedness of a third person to an amount not exceeding $500, held to be continuing. *Estate of Bentz*, 38 Leg. Intel. (Pa.) 94.

A wrote to B that C wanted to place a stock of groceries in his store, and that to enable C to do this A was willing to be responsible to B "for the amount of groceries he may order of you." Held not continuing. *Knowlton* v. *Hersey*, 76 Me. 345.

A guaranty of payment for goods to be sold "from time to time" to an amount not exceeding a specified sum, is continuous until the sums remaining unpaid reach the designated limit, even though the aggregate of purchases far exceeds it. *Crittenden* v. *Fiske*, 46 Mich. 70.

WILLES, J., in *Heffield* v. *Meadows*, Law Rep. 4 Com. Pleas 595, held that for the purpose of seeing what the parties were dealing about, it is proper to ascertain what was the subject-matter which they had in view when the guranty was given; "not for the purpose of altering the terms of the guaranty by words of mouth passing at the time, but as part of the conduct of the parties, in order to determine what was the scope and object of the intended guaranty." This ruling was approved in Brandt

Trustees of Presbyterian Board of Publication, etc., v. Gilliford et al.

on Suretyship and Guaranty, section 156. The contract of guaranty, as construed by the court, in *Mathews* v. *Phelps*, 61 Mich. 327, was as follows:

"It is hereby mutually agreed that William E. Moloney and Ralph Phelps, Jr., is to become the surety of Charles Savenac to James L. Mathews, for the sale of cigars, to the extent of two hundred dollars."

Savenac failed to return to Mathews money received by him on the sale of cigars to the amount of $169.04. It also appeared that the sales made by Savenac for Mathews amounted to more than $1,000; and counsel for the guarantors contended that the contract did not extend beyond the sale of $200 worth of cigars, and was not continuous; that Mathews having received returns exceeding $200 the guarantors were not liable.

Of this contention the court said: "This would be a narrow construction to place upon the terms of the contract. It is the extent of the liability, and not the extent of the sales, that is limited to $200."

That case seems very much like the one now under consideration.

The court there held that the guaranty was intended to continue so long as Savenac sold cigars for Matthews, or until ended by notice from the guarantors; that under a fair construction of the contract the guarantors were liable for the proceeds of the sales, "such liability being limited to two hundred dollars."

The court held further in that case, that in construing a contract of guaranty, the general rule arising by implication from the language used is, that when the amount of the guarantor's liability is limited, and the time is not, it will be held to be a continuing guaranty.

A similar ruling was made by this court in the case of *Wright* v. *Griffith*, 121 Ind. 478, where Judge MITCHELL,

speaking for the court said, that unless the words in which the guaranty is expressed fairly imply that the liability of the guarantor is to be limited, the guaranty will be regarded as continuing until it is revoked.

In the contract before us there is no limit expressed as to the amount of the sales or the time during which the guaranty should continue. Indeed the amount of sales guaranteed seems to be expressed as unlimited. Guaranty is expressly made of "payment for all sales which may be made." The only limitation named in the contract is as to the ultimate liability of the guarantors, and that is fixed at "not to exceed in any event $3,000."

From the words of the contract, then, we must conclude that the guaranty is a continuing one, the liability of the guarantors being limited to $3,000.

Neither are there any circumstances to be gathered from the complaint or the answer to show that a different construction from the plain meaning of the words should be given to the contract.

The very nature of the business tends to show that there was no limit intended as to the time when sales should cease, or as to the amounts of such sales. The appellant was engaged in publishing books and periodicals. William A. Patton desired to engage in selling those publications, purchasing supplies from appellant from time to time as his business should require. He continued in the business until he had purchased and disposed of more than ten thousand dollars worth of books and periodicals, making payments from time to time; and it does not appear that the guarantors during all these years expressed any intention of revoking their guaranty.

The answer states that the guarantors had no notice or knowledge of a large part of such sales. They had

expressly guaranteed "payment for all sales" which might be made by appellant to William A. Patton. It was their duty either to revoke that guaranty or to see that William A. Patton continued to make payment for the goods purchased.

That appellant took additional security from Patton could not lessen the obligation of the guarantors. It was rather a favor to them, relieving them to that extent.

The judgment is reversed, with instructions to sustain the demurrer of appellant to the eighth paragraph of the joint answer of the appellees George Gilliford and Joseph A. Patton, and for further proceedings.

Filed Oct. 17, 1894; petition for a rehearing overruled Dec. 21, 1894.