## CURTIS V. BECKETT.

[No. 17,119. Filed October 21, 1943. Rehearing Denied
November 18, 1943. Transfer Denied December 13, 1943.]

*Otis E. Gulley* and *Curtis W. Roll*, both of Indianapolis *(Hammond, Buschmann, Roll & Alexander*, of Indianapolis, of counsel) for appellant.

*Wymond J. Beckett*, of Indianapolis, for appellee.

, DRAPER, P.—The appellant appeals from a judgment of the court below dismissing his amended and supplemental complaint, whereby he seeks to recover from the appellee on a written contract of guaranty.

The complaint alleges the organization of and issuance by the Joe R. Beckett-Douglas Court Realty Company (hereafter referred to as the company) of 1750 shares of stock of the par value of $100.00 each, of which 1150 shares were preferred and 600 common. That the company covenanted to pay annual cumulative dividends on the preferred stock at the rate of 6 per cent per annum, payable quarterly commencing in 1924 and to redeem the same in accordance with

certain redemption schedule, each certificate fixing the date when and the terms upon which it was redeemable, commencing in 1926 and extending through 1939. That in 1931 the company partially defaulted in the redemption of the stock and the payment of dividends and that since 1931 no redemptions have been made and no dividends paid; that $90,600.00 par value of the preferred stock remained unpaid and a receiver appointed for the company in April, 1937, sold all of its assets and paid a liquidating dividend of $21.17 per share on the outstanding preferred stock to the holders thereof. The complaint alleges the maturity dates of 459 shares of preferred stock owned by appellant and shows that in 1924 the appellee was the owner of substantially all of the common stock of the company and executed the guaranty hereinafter set out in consideration of the underwriting of the preferred stock issue by the Peoples State Bank of Indianapolis. The appellant seeks to recover the par value of the shares held by him, plus accumulated dividends, less liquidating dividends received.

The preferred stock certificates provide, among other things, for the payment of cumulative quarterly dividends payable out of the net earnings of the company and recite that:

> "This certificate shall be redeemed at par, plus all arrearages of dividends, . . . on the (appropriate date), and may be redeemed by the company on December 1, 1926, or any dividend paying date thereafter, upon thirty days' previous notice to the holders thereof, at one hundred one per cent (101%) of par, and any and all arrearages of dividends. Any notice in conformity herewith to the last and usual place of residence of the holder hereof as shown on the stock books of the company, shall be deemed sufficient notice under this provision, and no interest shall accrue on the said preferred stock from and after the redemption date

as evidenced by said notice; provided, always, that there shall be the funds actually in the hands of The Peoples State Bank, Registrar, from and out of which to take up and retire said preferred stock so called for redemption, on or before the date actually named for such redemption.".

The guaranty agreement signed by the appellee reads. as follows:

"In consideration of the Peoples State Bank underwriting a certain preferred stock issue of the Joe R. Beckett-Douglas Court Realty Company, of which company the undersigned owns practically all of the common and voting stock and is thereby and because thereof deeply interested and concerned in the success thereof and extremely desirous of the said corporation obtaining the financial assistance in order to carry forward plans which will be of considerable future value to the undersigned, the said undersigned hereby guarantees the payment of the dividends and retirements of said preferred stock in strict accordance with the preferred stock certificate issued in evidence of the same, and in addition thereto guarantees the payment of any and all taxes and other charges such as improvement assessments, a failure to pay which would result in the sale of said property.

"This guaranty shall be in full force and effect so long as any of said preferred stock shall be outstanding and shall extend to the heirs, executors, administrators, assigns and personal representatives of the said guarantor herein."

The appellee filed eighty-two interrogatories, most of which the appellant was required to and did answer, and by the answers the fact was developed that the appellant had purchased all of his preferred stock from divers persons during the year 1938, which was after the appointment of the receiver for the company, at from $16.00 to $23.00 per share, the total price paid

for all stock being less than the $9,717.03 thereafter received by the appellant as a liquidating dividend.

The appellee thereupon filed his written motion to strike out and reject appellant's complaint according to the provisions of § 2-1054, Burns' 1933, upon the theory that from the answers to the interrogatories it appeared that the pleading was without merit, and false in fact, in that the appellant's complaint shows that he suffered no damage whatever but on the contrary had profited by the transaction, and that "as his complaint is based on damage for a breach of contract, it should be stricken out."

The correctness of the court's ruling on appellee's motion to strike out and reject the complaint for the reasons assigned in the motion is the only question before the court.

The complaint does not allege, as contended by appellee, that appellant's stock was original preferred stock bought by him from the company. It alleges that appellant is the owner and holder of 459 shares of the preferred stock of the company. The answers to interrogatories upon which appellee relies, show that appellant bought the stock during 1938 from various persons who had, so far as the record shows, paid par therefor. The stock was assignable by its terms. The appellee properly admits the right of stockholders to sell and transfer their stock to each other or to strangers when the corporation is in the hands of a receiver, unless restrained from so doing. See 19 C. J. S. p. 1209, § 1495; *Butler* v. *Beach* (1909), 82 Conn. 417, 74 A. 748. None of the stock was bought by the appellant from the company or the receiver. It was merely transferred to its new ownership and no

question as to the right of the company to sell its stock while in the hands of a receiver is involved in this case.

Those who sold and assigned the stock to the appellant had the right to sell at any price they were able to get and chose to accept. The transfer of the stock in the company, insolvent and in process of liquidation though it was, carried with it to the transferee the rights and liabilities of the transferor, 18 C. J. S. p. 1073, § 441; Thompson on Corporations, 3rd Ed. Vol. 6, § 4394, and see *People* v. *California Safe Deposit and Trust Co.* (1912), 18 Cal. App. 732, 124 P. 558, and the fact that the stock was purchased by appellant for less than par, and in fact for less than the liquidating dividend later paid could not affect the responsibility of the appellee in connection with the redemption of the stock or the payment of dividends. See *Ammon* v. *Cushman Motor Works* (1935), 128 Neb. 357, 258 N. W. 649.

The appellee insists that the pleading is false because the certificates, one of which was exhibited with the complaint, recite that the shares are "fully paid and non-assessable," whereas the appellant admits that he paid less than par for them. The fact of this recital in the exhibited certificate does not amount to an allegation that the appellant had paid par for his stock and in nowise renders the pleading false.

The appellee asserts that the guaranty is merely an unaccepted offer to guarantee running to, and for the benefit of, the bank; that if it does constitute a valid and enforceable contract the appellant is in no event a proper beneficiary under it; and even if he is a proper beneficiary under it, he has no right to sue in his own name to collect dividends or maturities; and the appellee makes other assertions

more or less related to those just mentioned and equally extraneous to the issue presented here. With these contentions we are not concerned in this appeal. If the appellee deems the complaint to be deficient in that these are fatal infirmities showing upon its face, he should challenge the complaint by pleadings appropriate for that purpose. He also urges the matter of an agreement entered into between the appellant and one Logsdon, then president of the company, as shown by answers to interrogatories, whereby it was agreed that Logsdon would not press a claim for some $14,000 filed by him with the receiver as a claim prior to that of preferred stockholders, but would consent to the allowance and payment of only $1,700.00 to him by the receiver, in consideration of which the appellant would pay to Logsdon one-third of his recovery from the appellee, and on the same day the court administering the receivership after hearing evidence entered an order allowing Logsdon the sum of $1,700.00 on his claim and the same was paid by the receiver from the funds in his hands as such. The entry of this order and payment of $1,700.00 from these funds affected the rights of all of the holders of preferred stock in that the liquidating dividend was thereby reduced, and the rights of the appellee in that this money was not used for the purpose of the liquidating dividend when such use would have reduced his liability on his guaranty to that extent. It does not appear that the contract between appellant and Logsdon was brought to the attention of the court, but whether this contract and the later proceedings looking to the performance of it were right or wrong is not, so far as we can see, material to the question raised on this appeal.

The appellee contends that under the circumstances of this case the measure of appellant's damage is the

actual loss he sustained by reason of the breach and he insists that the appellant having suffered no loss sustained no damage, and therefore cannot maintain this action. But the liability of the guarantor in a case of this kind is measured by the liability of the principal. *Smith* v. *Rogers* (1860), 14 Ind. 224; *Hamilton* v. *Meiks et al.* (1936), 210 Ind. 610, 611, 612, 614, 4 N. E. (2d) 536. In the case of *Hamilton* v. *Meiks, supra,* the contract of guaranty written on the back of the preferred stock certificate was as follows: "We, the undersigned, guarantee the payment of this certificate of stock according to its terms." The Supreme Court in discussing the effect of this agreement said in the language of Judge Fansler: "This amounts to an unqualified guaranty of the payment of the certificate of stock according to its terms. It could mean nothing else than an agreement that if the corporation did not pay, or if it could not pay, the guarantors would pay." And again, "The agreement of the guarantor was not to do what the corporation could be compelled to do; the agreement was to do what the corporation agreed to do." The company's liability in this case was measured by the terms of its agreement to pay as evidenced by its certificate. The appellee's liability is measured by the same yardstick. The company obligated itself to redeem the stock from the holders thereof at par plus all arrearages of dividends. The appellee guaranteed the payment of the dividends and retirements of the stock "in strict accordance with the preferred stock certificate issued in evidence of the same." The appellee did not agree to reimburse the holders of the preferred stock the amounts paid by them for the stock, whether more or less than par, nor to pay them what he considers to be a fair profit. The price paid for the stock by the appellant could in no way change

the terms of the appellant's agreement nor affect the extent of his liability. That the agreement in this case was by way of a separate instrument rather than by endorsement on the certificate itself, as in *Hamilton* v. *Meiks, supra,* can make no difference.

The appellee contends that the company was not bound to make payment of dividends and retirements, but that payment of each was conditional on the sufficiency of the net earnings of the company. However, we do not so construe the language of the certificate. It appears to us that the company unqualifiedly agreed to redeem the preferred stock at par plus all arrearages of dividends, on the redemption date. The proviso that funds for the retirement of the stock must be actually in the hands of the registrar plainly relates only to the optional retirement of stock called. for redemption before the date for redemption as fixed in the certificate.

Judgment reversed with instructions to reinstate appellant's amended and supplemental complaint, and for further proceedings.

NOTE.—Reported in 50 N. E. (2d) 920.