**Robert W. GOEKE, Defendant-Appellant,**

v.

**MERCHANTS NATIONAL BANK AND TRUST COMPANY OF INDIANAPOLIS, Plaintiff-Appellee.**

No. 1–883A271.

Court of Appeals of Indiana, First District.

Aug. 21, 1984.

Rehearing Denied Sept. 27, 1984.

---

Michael V. Gooch, Harrison & Moberly, Indianapolis, Peter D. Shumacker, Shumacker & Amick, Greenfield, for defendant-appellant.

John D. Nell, Daniel D. Trachtman, Wooden, McLaughlin & Sterner, Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Robert W. Goeke (Goeke), appeals a judgment rendered by the Hancock Circuit Court in favor of plaintiff-appellee, Merchants National Bank and Trust Company of Indianapolis (Merchants), on Goeke's continuing limited guaranty.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

James P. Farley (Farley) and Goeke were partners in enterprises which involved land development and construction of apartment complexes named Arrowood, Tomahawk and Tippecanoe Village. Farley had other such enterprises called Lodestar, Thunderhawk, Aztec and Mohawk. In financing the enterprises, Farley and Goeke dealt extensively with Merchants over a course of years. Throughout that period, Farley negotiated the loans, then took whatever documents necessary to Goeke for signature, and returned them to Merchants. The documents even included a mortgage on Goeke's personal residence. One of the transactions was a note by the entity Lodestar to Merchants in the amount of $96,-500.00 on which Goeke was a maker and endorser; these acts had the effect of making him a guarantor. That note, which was a renewal of past indebtedness, was secured by a pledge of corporate stock owned by Goeke. In connection with the Lodestar note, Goeke executed to Farley an unlimited power of attorney which remained unrevoked at all times relevant. The Lodestar note remained unpaid on January 9, 1975. It appeared at that time that Farley had begun to have financial problems with his numerous entities, and all of the events which thereafter occurred appear to be unsuccessful efforts to avoid a collapse.

On January 9, 1975 a trust, designated as 1903, was created by Farley and his wife, Sharon, naming Lake County Trust Company as trustee and in which the Farleys remained beneficiaries. Upon direction of the beneficiaries, the trustee was empowered to execute notes and mortgages. On the same day as its creation, 1903 took title to 18.5 acres of real estate referred to as "Tomahawk Commercial Land" located in

Marion County, Indiana. Pursuant to the direction of the beneficiaries, 1903 executed a note to Merchants in the amount of $310,072.21 on January 13, 1975, which was secured by a mortgage containing a future advance clause on the Tomahawk property, due to mature on June 13, 1975. On January 15, 1975, a second note was executed by 1903 to Merchants in the amount of $54,927.79, which matured on June 15, 1975. These transactions, totaling $365,000.00, were a refinancing of a number of Farley-Goeke debts which included the Lodestar note.

On January 13, 1975, in addition to the Farleys' guaranty, Goeke executed a "Continuing Limited Guaranty" to Merchants which reads as follows:

## "CONTINUING LIMITED GUARANTY

In consideration of credit which MERCHANTS NATIONAL BANK & TRUST COMPANY OF INDIANAPOLIS ('Merchants') may from time to time extend to *Lake County Trust Company, as Trustee under a Trust Agreement dated January 9, 1975, known as Trust # 1903* ('Borrower'), the undersigned hereby individually, jointly and severally, and unconditionally guarantee to Merchants its successors and assigns, the payment when due, without presentment or demand, protest, or notice of dishonor, and with a right of set-off against the accounts of the undersigned with Merchants, together with costs of collections and reasonable attorneys' fees and without relief from valuation or appraisement laws, of the principal of and interest on all present and future indebtedness or obligations incurred by Borrower to Merchants in accordance with the terms and conditions of such indebtedness or obligations and all extensions or renewals thereof, whether evidenced by promissory notes, checks, drafts, bills of exchange, overdrafts, open accounts or otherwise.

This guaranty is executed under and shall be construed in accordance with the laws of the State of Indiana.

Notice of the acceptance of this Guaranty by Merchants is hereby waived by the undersigned. This guaranty may be terminated by the undersigned as to future indebtedness or obligations of Borrower to Merchants after the date of receipt by Merchants at its principal banking offices of written notice from the undersigned.

Notwithstanding the foregoing, the individual liability of each of the undersigned for indebtedness or obligations of Borrower to Merchants shall in no event exceed the sum of *Ninety-Six Thousand, Five Hundred and No/100—Dollars* ($96,500.00)."

Thereafter, the $96,500.00 Lodestar note was cancelled and the collateral returned. The guaranty was prepared by Merchants and given to Farley, who obtained Goeke's signature and returned it to Merchants. Neither the guaranty nor the power of attorney was ever revoked.

The notes of January 13 and January 15 fell into default in the latter part of June, 1975. Pursuant to work out negotiations, Merchants extended the credit. A new note dated September 19, with a due date of December 18, 1975, was executed by 1903 to Merchants in the amount of $362,988.32, representing the original obligation less $2,011.68 previously paid on principal. That note likewise fell into default after maturity and on May 13, 1980, a judgment on the notes was entered as follows:

| | |
|---|---|
| Principal | $362,988.32 |
| Interest | 193,394.11 |
| Attorney Fees | 15,000.00 |
| TOTAL | $571,382.43 |

The January 13, 1975 mortgage was foreclosed and Merchants purchased the Tomahawk property at the Sheriff's sale for $75,000.00.

During the progress of the foregoing events, back in August or September, 1975, Farley managed to sell one acre of the Tomahawk property for $45,000.00, and Merchants released the mortgage on that parcel. The proceeds were applied as follows:

| | |
|---|---|
| Interest on the two notes (January 13 and 15, 1975) | $28,912.42 |
| Taxes and attorney fees | 5,075.90 |
| Principal | 2,011.68 |
| Farley's personal debt on office building | 9,000.00 |

Also, in November, 1975, Merchants became obligated to pay an irrevocable letter of credit issued to Guardian Mortgage Investors in the amount of $360,000.00 to finance Farley's enterprises. On December 12, 1975, pursuant to an agreement with Farley, 1903 executed a subsequent mortgage on the Tomahawk property to secure the letter of credit obligation. There is no evidence that the transaction altered, impaired, or subordinated the January 13, 1975 mortgage. There is also no evidence that Goeke was consulted, notified, nor was his personal consent obtained for the September 19 note, the sale of the one acre, and the December 12 mortgage. The trial court found that consent was given for these transactions through Farley and Steven Cohen, an attorney, both acting as authorized agents of Goeke.

The trial court entered a judgment against Goeke on his guaranty as follows:

| | |
|---|---|
| Principal | $96,500.00 |
| Attorney Fees | 36,000.00 |
| Interest | 55,118.65 |
| TOTAL | $187,618.65 |

## ISSUES

Goeke raises the following issues on appeal, restated by us as follows:

I. (a) Whether he, as a guarantor or surety, was discharged when the principal gave and the creditor took the new extension note with altered principal and security, maturity dates, and terms of payment, without his consent. (b) Whether he was discharged by the issuance of the second mortgage on Tomahawk property, which mortgage created a lien for other debts not incurred by 1903 thereby diluting and devaluing the security.

II. Whether he was discharged as guarantor because the collateral was impaired by the sale of the one acre and the imposition of the second mortgage without his consent.

III. Whether the court erred in finding an agency relationship between Goeke and Farley and Cohen.

IV. Whether an enforceable guaranty failed to come into existence because of a lack of consideration.

V. Whether he could have a liability larger than the principal, where the principal had no obligation under the trust agreement.

VI. Whether he is liable for any amount in excess of $96,500.00.

## DISCUSSION AND DECISION

*Issue I: Modification of Obligation.*

Goeke argues that any binding change in the principal contract to which the guarantor does not consent discharges the latter from liability. He then shows that the September 19 note in the amount of $362,988.32 altered the terms of the January 13 and 15 notes in that: (1) interest was payable at maturity rather than monthly; (2) maturity was extended to December 18, 1975; (3) the principal balance was reduced from $365,000.00 to $362,988.32; (4) interest was reduced from 5% over prime to ½% over prime; and (5) the debt was secured by one acre less collateral. As a beginning point of the discussion, we examine some relevant rules relating to contracts of guaranty.

*Loudermilk v. Casey,* (1982) Ind.App. 441 N.E.2d 1379, discusses the extent of the liability of a guarantor:

"The extent of a guarantor's liability is determined by the terms of his contract. *Hamilton v. Meiks,* (1936) 210 Ind. 610, 4 N.E.2d 536; *Crouch and Son v. Parker,* (1919) 188 Ind. 660, 125 N.E. 453; *Orange-Co., Inc. v. Brown,* (1979) [181] Ind. App. [536], 393 N.E.2d 192. The interpretation of a guaranty is governed by the same rules applicable to other contracts. *American Fletcher National*

Bank & Trust Company v. Pavilion, Inc., (1982) Ind.App., 434 N.E.2d 896; Orange-Co., supra. In the absence of ambiguity, the construction of a guaranty is a question of law. Pavilion, supra; Huntington [Mutual Ins. Co. v. Walker, (1979) Ind.App., 392 N.E.2d 1182], supra; House v. Lesow, (1975) 167 Ind. App. 449, 339 N.E.2d 86. The court will construe the guaranty so as to give effect to the intentions of the parties, which it ascertains from the language of the contract in the light of the surrounding circumstances. The guaranty and any other contemporaneous written agreements it incorporates are construed together in order to determine the parties' intentions. Pavilion, supra; Boswell [v. Lyon, (1980) Ind.App., 401 N.E.2d 735], supra; Orange-Co., supra; Huntington, supra. The words of the contract are given their ordinary meaning. Orange-Co., supra; Huntington, supra. The terms of the guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. Orange-Co., supra; House, supra. If the court finds that any term is ambiguous, then the parties may introduce extrinsic evidence of its meaning, and the interpretation of that term becomes a question of fact. A word or a phrase is ambiguous if reasonable people could differ as to its meaning. Boswell, supra; House, supra.

Loudermilk, supra, at 1383.

In Orange-Co., Inc. v. Brown, (1979) 181 Ind.App. 536, 393 N.E.2d 192, we stated in relation to a guarantor's liability:

".. his liability will not be extended by implication beyond the terms of his contract. Markland Mining & Manufacturing Co. v. Kimmel, (1882) 87 Ind. 560. A guarantor is a favorite in the law and is not bound beyond the strict terms of the engagement. Markland Mining & Manufacturing v. Kimmel, supra. Moreover, a guaranty of a particular debt does not extend to other indebtedness not within the manifest intention of the parties. Yater v. Judah, (1860) 15 Ind. 228. The Indiana rule conforms with the general rules governing contracts of suretyship and guaranty set out in Stearns: Law of Suretyship, Elder's Revision, (5th Edition, 1951) Sec. 4.2 Construction of Contracts of Guaranty; and Vol. 10 Williston on Contracts; Contracts of Suretyship and Guaranty Sec. 1239, (3d Edition, 1970)."

Orange-Co., supra, at 195.

As Goeke correctly argues, it is a general rule that when the parties cause a material alteration of the underlying obligation without the consent of the guarantor, he is discharged from further liability whether the change is to his injury or benefit for the reason that it is no longer his contract. American States Insurance Company v. Staub, (1977) 175 Ind.App. 244, 370 N.E.2d 989. Indiana Telco Federal Credit Union v. Young, (1973) 156 Ind.App. 483, 297 N.E.2d 434. The surety may only insist on compliance with material requirements, clearly expressed, which are made a condition to liability. Detroit Fidelity and Surety Co. v. Bushong, (1931) 96 Ind.App. 352, 175 N.E. 683. Extension of time for payment without the surety's consent operates as a discharge of liability, Owen County State Bank v. Guard, (1940) 217 Ind. 75, 26 N.E.2d 395, but prior consent contained in the instrument is binding upon the surety. Carney v. Central National Bank of Greencastle, (1983) Ind. App., 450 N.E.2d 1034; IND.CODE 26–1–3–118(f).

Most of the authority cited by Goeke concerns the discharge of a surety or guarantor of a specific contract because the contract was altered. The Weed Sewing Machine Company v. Winchel, (1886) 107 Ind. 260, 7 N.E. 881, involves a guaranty remotely similar to the one here. In Winchel, a surety bond was executed to guaranty the remittance of funds and performance of a consignment sales agency contract which was a continuing guaranty of "every indebtedness or liability now existing, or which may hereafter in any manner

exist or be incurred ... whether such indebtedness shall exist in the form of bank accounts, notes, renewals, or extensions of notes, or accounts, ... or otherwise ...". *Winchel, supra,* at 262, 7 N.E. 881. Once the agency was terminated, a shortage of cash remittance and note proceeds of sales of consigned goods was determined. The shortage had accrued gradually throughout the course of the contract with the knowledge of Weed Sewing Machine Company and its agent, but not with the knowledge of the sureties. Weed took the agent's three notes in discharge of the obligation payable in the future. The sureties had no knowledge of the shortage, settlement, or notes. At the time of the termination of the agency, the agent was solvent, but at the time of the maturity of the notes, he was not. No consent to the notes were obtained from the surety. *Id.* at 263, 7 N.E. 881.

Using the standard rules of construction, the supreme court held that the bond was intended as a security for the payment of debts arising out of the agency contract and not otherwise. The contract provided for no notes to Weed from the agent. The agent was permitted to take cash and notes from customers as payment for the sewing machines and then remit the cash and endorse the notes to Weed; if he failed to do so, the sureties became liable. The notes mentioned in the bond were the *customer notes,* and not notes executed after the termination of the contract. The sureties were charged with new obligations not contemplated in the contract which suspended the right of creditors to proceed against the principal to collect the original obligation. *Id.* at 264–65, 7 N.E. 881.

The key to the above decision is the construction placed upon the guaranty agreement. The agreement clearly provided for notes and extensions, but the court construed those notes to mean customer notes to the agent. The case is thus distinguishable from the present one.

■ The judgment of the trial court herein can be sustained upon two theories. First, by the very terms of Goeke's guaran-

ty, he consented to extensions and renewals, and the remainder of the changes in the September 19 note were not material. Second, the guaranty covered *any* debt and the September 19 note was *any* debt.

72 C.J.S. *Principal and Surety* Sec. 126 (1951) states that a change which alters the legal identity of the instrument, substantially increases the chance of loss to the surety, or puts the surety in a different position, is material. Goeke's consent in advance to renewals and extensions included in the guaranty binds him. *Carney, supra;* IND.CODE 26–1–3–118(f). Lowering of interest rates, reduction of the principal balance, and the sale of collateral to apply on an overdue obligation do not increase the chance of loss or put Goeke in a different position. The sale of collateral is discussed *infra.* However, we desire to place our decision upon the construction of the guaranty. We refer the reader to *Loudermilk, supra,* for appropriate rules.

The guaranty indicates that Goeke guaranteed the payment of "all present and future indebtedness or obligations incurred by the borrower to Merchants". The liability assumed is sweeping, all inclusive, and without restriction except for the limitation of $96,500.00. The instrument does not, as in most of the cases cited or existing, refer to the guaranty for the performance of a specific instrument or transaction. The guaranty contemplates a series of debts, or revolving debts, which may be incurred by successive transactions. The September 19 note and its terms, is indebtedness as much within the contemplation of the guaranty as the January notes. Even if the September 19 note, instead of being a renewal, had been a note in addition to the January notes, Goeke would be bound by his comprehensive guaranty. Therefore, construing the guaranty in that manner, the rules relating to the alteration of the underlying debt no longer apply. There was no legal obligation to consult Goeke. This latter proposition was discussed in *Wright v. Griffin,* (1889) 121 Ind. 478, 23 N.E. 281:

"Moreover, it is an established rule, applicable to cases like the present, that, if

upon a fair construction of the instrument it appears to be the personal undertaking of the guarantor to pay for goods sold, or to be sold to a third person, it will be regarded as an absolute promise or conclusive guaranty, which when acted on, makes the promisor immediately liable, and no notice is necessary of the acceptance of the guaranty.

The contract involved in the present case is a direct engagement to pay. The language is in effect, "let my daughter have what goods she wants and I will pay the bills." As was said in *Smith v. Dana*, 6 Hill, 543, a case parallel with the present: "But here the undertaking was absolute. The defendant said to the plaintiffs, in substance, 'If you deliver the goods, I will guaranty the payment.' We can not add a condition that the defendant shall have notice. He should have provided for that himself in the proposal made to the plaintiffs." *Scott v. Myatt*, 24 Ala. 489; *Union Bank, etc. v. Coster*, 3 N.Y. 203.

According to its terms the guaranty is not only absolute but it is continuing. There is nothing in the letter to indicate, or from which the inference can arise, that the liability of the guarantor was to be restricted to a single transaction; on the contrary, the language, which need not be repeated, indicates that successive bills were contemplated. The rule is that unless the words in which the guaranty is expressed fairly imply that the liability of the guaranty is expressed fairly imply that the liability of the guarantor is to be limited, it continues until the guaranty is revoked. Brands Suretyship and Guaranty, sections 133, 134. As we have seen, the language here is without limitation."

*Wright, supra*, at 481–482, 23 N.E. 281 (citations omitted). *See also Trustees of Presbyterian, etc. v. Gilliford, et al*, (1894) 139 Ind. 524, 38 N.E. 404; *Tapper v. New Home Sewing Machine*, (1898) 22 Ind.App. 313, 53 N.E. 202.

We hold that Goeke is liable on his guaranty.

Issue III relates to the agency of Farley and Cohen. The court found they acted in actual or apparent authority to consent to the alteration. In light of our holding here, we need not decide this issue.

*Issue II: Impairment of Collateral.*

■ Goeke claims that the sale of one acre in August 1975 and the December 12 second mortgage impaired the collateral. He cites *White v. Household Finance Corp.* (1973) 158 Ind.App. 394, 302 N.E.2d 828. That case states:

"When a creditor releases or negligently fails to protect security put in his possession by the principal debtor, the surety is released to the extent of the value of the security so impaired."

*White, supra*, at 832.

Goeke argues that his debt should be reduced by the amount of the sale, $45,-000.00. The trial court found there was no impairment.

As shown in the Statement of Facts, all the proceeds of that sale were applied to the debt except $9,000.00. The foreclosure judgment, as shown above, was $571,-382.43, against which Goeke's guaranty was applicable, and Merchants purchased the property at a foreclosure sale for $75,-000.00. The court found that because of the limited nature of Goeke's guaranty, there was no effective impairment of the collateral. Only a misapplication of $9,000.00 to Farley's office building mortgage existed. However, even if all of the $45,000.00 was added to the $75,000.00, the total security would have been no more than $120,000.00, far less than the $571,-382.43 to which Goeke's $96,500.00 guaranty remained applicable. We find no error.

■ Goeke further argues that the mortgage placed on the Tomahawk property on December 12, 1975 altered his guaranty contract and hence he is discharged. While not so denominated as a second mortgage, the December mortgage by its terms did not impair or subordinate the January 13 mortgage; since it was executed and recorded at a later date, its status is that of a second mortgage. Only the first mortgage

was foreclosed. Completely ignoring the fact that the December mortgage was a second mortgage, Goeke argues that a $360,000.00 plus additional debt was created which placed an additional burden on him. He reasons that the December 12 mortgage weakened and diluted the security because it inhibited the sale of the secured property. Goeke cites IND.CODE 26-1-3-606 which provides that a holder discharges any party to an instrument by impairment of the collateral, and *First Bank and Trust Co., v. Palatine Post,* (1973) 10 Ill.App.3d 127, 293 N.E.2d 907, which merely holds that failure to file financing statements impairs collateral. The latter authority is not on point here. There is no evidence that compelled the conclusion that the first mortgage was impaired, and the court so found.

*Issue IV: Consideration.*

Goeke argues that the guaranty was not supported by consideration. He points to a commitment letter dated January 13, 1975, executed by Merchants and addressed to and accepted by Farley on the same day. The letter sets out the conditions of a loan for $365,000.00 and mentions only Farley's guaranty, not Goeke's. Therefore, contends Goeke, his guaranty was not the inducement for the extension of credit. He also argues that there was no proof that Goeke's guaranty was delivered to the bank before the balance of the loan was disbursed on January 15, 1975. As shown by the Statement of the Facts, the $310,-072.21 note and mortgage were executed on January 13, 1975, and the $54,927.79 note was executed on January 15, 1975. The guaranty was dated January 13, 1975.

■ Where an instrument or any signature thereon is dated, the date is presumed to be correct. IND.CODE 26-1-3-114(3). Goeke points to no evidence other than conjecture which compels a conclusion contrary to the presumption that the guaranty was executed contemporaneously with the notes and mortgage. When writings are executed at the same time and relate to the same transaction or subject matter,

they must be construed together in determining the contract, and consideration for one instrument may be found in a contemporaneous instrument. *Torres v. Meyer Paving Co.,* (1981) Ind.App., 423 N.E.2d 692. Goeke concedes that a guaranty executed contemporaneously with an extension of credit as an inducement therefor is supported by consideration. Goeke also ignores the contemporaneous cancellation and the release of the pledged collateral of the Lodestar note which was a part of this transaction. Detriment alone suffices as consideration.

■ We find no error.

*Issue V. Guarantor's Liability No Greater Than Principal's.*

■ Goeke refers to clauses in the trust agreement and the notes and mortgages which have the effect of exculpating Lake County Trust Company from personal liability and limiting recovery against it to the extent of the trust property. In a strained construction, Goeke argues that 1903 is not obligated to pay the notes; therefore, since the principal is not liable, he as guarantor, is not liable. Generally, a surety's liability is no greater than the principal's. 26 I.L.E. *Suretyships* Sec. 21. *Curtis v. Beckett,* (1943) 114 Ind.App. 221, 50 N.E.2d 920.

■ It is true that a trustee, unless otherwise contracted, has no personal liability on trust contracts. IND.CODE 30-4-3-10(a); *Donahue v. Watson,* (1981) Ind. App., 413 N.E.2d 974. However, any reasonable interpretation of the instruments indicate that they exculpate Lake County Trust Company only from personal liability, and not trust liability on its trust contracts. Goeke's corresponding argument that though the trust had power to execute notes and mortgages, the trust instrument conferred no corresponding power to pay them, is specious.

We find no error.

*Issue VI: Interest and Attorney Fees.*

Goeke finally argues that even though the court may hold him liable up to the maximum $96,500.00, he is not liable for

any amount over that sum for attorney fees and interest. We agree.

The parties cite no definitive Indiana case on this subject. Other jurisdictions demonstrate a split of authority. 38 C.J.S. *Guaranty* Sec. 56, 57 and 58 (1951) seem to say the general rule is that the guarantor is liable for the interest even though the principal, plus interest, exceeds the stated limitation. This rule is followed in *Feucht v. Clarke*, (1939) 299 Ill.App. 477, 20 N.E.2d 312 and *Moody v. Kirkpatrick*, (M.D.Tenn.1964) 234 F.Supp. 537. *Hill Mercantile Co. et al. v. Rotan Grocery Co.*, (1910) Tex.Civ.App., 127 S.W. 1080 holds to the contrary. The last case dealt with a guaranty for the payment of indebtedness not to exceed $7,000.00 with interest and attorney fees thereon. The court stated that contracts of guaranty are strictly construed in favor of the guarantor. *Hill, supra*, at 1082. In this contract, there was a distinct limit of $7,000.00. Nowhere in the instrument did it state that the parties intended interest and attorney fees to create a liability exceeding $7,000.00. The language of the instrument may be construed to mean that attorney fees and interest were guaranteed up to $7,000.00. This construction harmonized the several provisions of the contract. *Id.* at 1083. A similar result was reached in *Peoples Bank of New Orleans v. Lemarie*, (1902), 106 La. 429, 31 So. 138. Other cited cases do not appear to deal with a stated limitation.

■ We are of the opinion that the proper path to solution involves the construction of this particular contract. *See Lowdermilk, supra; Orange-Co., supra.* A guarantor is a favorite in the law, and he is not bound beyond the strict terms of his engagement. *Orange-Co., supra.* He is entitled to a strict construction of the contract in his favor. *State v. Adams*, (1918) 187 Ind. 165, 118 N.E. 680. Any ambiguities in a contract are to be construed against the party who employed the language and prepared the contract. *Rieth-Riley Construction Co. v. Auto-Owners Mutual Insurance Company*, (1980) Ind. App. 408 N.E.2d 640; *English Coal Co.,*

*Inc. v. Durcholz*, (1981) Ind.App., 422 N.E.2d 302.

■ Goeke ... unconditionally guarantee[d] to Merchants ... the payment when due ... together with costs of collections and reasonable attorney fees ... of the principal and interest ... on all ... indebtedness and obligations incurred by borrower to Merchants ...: . At the bottom of the page, following the above language, the limitation appears:

"Notwithstanding the foregoing, the individual liability ... for indebtedness and obligations of borrower to Merchants shall in no event exceed the sum of $96,-500.00."

A number of legitimate but conflicting constructions can be placed upon this instrument. Through numerous readings, except by conjecture, we cannot interpret its meaning. For example:

1. The guaranty can be construed to, and indeed seems to, mean that Goeke guaranteed principal plus interest and attorney fees, so long as the aggregate did not exceed $96,500.00. There is no suggestion in the instrument that the limitation would not apply to the attorney fees and interest.

2. The $96,500.00 guaranty was given in exchange for a release and refinancing of the Lodestar note in which Goeke was a maker. It may be inferred that it was only intended that he maintain the same relative position as a maximum.

3. A construction in favor of Merchants may exist in that the first paragraph requires payment of principal, interest and attorney fees. The limitation clause used only the words "indebtedness" and "obligations" and therefore the limitation applies only to principal, so interest and attorney fees are also assessable. However, this construction is weakened by the very real possibility that the mention of collection costs, attorney fees, and interest in the first paragraph refers only to the interest and attorney fees assessable on the collection of principal notes and not interest and attorney fees incurred by the collection on

the guaranty. In this latter event, the $96,500.00 would be a maximum for all purposes.

Clearly, a serious, if not critical, ambiguity exists in the document, and according to the rules of construction, it must be resolved in favor of Goeke and against Merchants. We are of the opinion that, in applying a construction most favorable to Goeke, the limitation clause imposes a maximum liability of $96,500.00 in the aggregate. Should Merchants have intended a different interpretation, it was their privilege and duty to draft the instrument with sufficient clarity so that persons with whom they deal as well as courts who are called upon to construe the document may intelligibly comprehend and apply it. The judgment on this issue is ordered modified and entered in the amount of $96,500.00.

Judgment affirmed in part and reversed in part.

ROBERTSON and RATLIFF, JJ., concur.