May Term, 1860.

SMITH
v.
ROGERS.

*R. Vaile* and *H. A. Brouse*, for the appellees.

---

SMITH and Another *v.* ROGERS and Others.

An assignment of a contract vests in the assignee all the rights, and imposes upon him all the burdens and conditions, to which the assignor was entitled or subjected under the contract. ·

A. contracted with B. for 25,000 bushels of corn. B. had contracted with C. for 15,000 bushels. D. had contracted with C. for 4,000 bushels. A. afterwards assigned his contract to D., and guarantied the delivery of the 25,000 bushels. That contract contained a stipulation that the first corn received by A. from C. should be applied upon B.'s contract. C., with notice of the assignment, delivered 12,757 bushels to D., making no application of it to either contract. D. applied it, first, to his own contract with C. for 4.000 · bushels, and the rest to B.'s contract with C. for 15,000 bushels. *Held*, in a suit by D. against A. upon the assignment and guaranty, that the 4,000 bushels applied by D. to his own contract with C. should have been applied upon B.'s contract.·

The liability of a guarantor is measured by that of his principal, unless he expressly assumes a less or a greater liability.

May Term,
1860.

SMITH
v.
ROGERS.

APPEAL from the *Tippecanoe* Circuit Court.

Friday,
June 1.

DAVISON, J.—*Smith* and *Hunt*, who were the plaintiffs, sued the appellees, who were the defendants, upon the assignment and guaranty of a written contract. The contract is substantially as follows:

" *E. M. Weaver* has this day sold *Rogers, Reynolds* and *Martin,* 25,000 bushels of corn, deliverable on board canalboats, at points on the canal between *Lafayette* and *Granville,* and at *Granville,* in quantities similar to those hereinafter written, during the season next after the date hereof, at 39 cents per bushel, making the whole amount 9,750 dollars. And it is agreed that the first corn received by *Rogers, Reynolds* and *Martin,* from *Andrew Scott,* shall apply to *Weaver's* contracts with him, until they are filled. *Lafayette, January* 31, 1853. [Signed,] *E. M. Weaver.*"

Annexed to this contract, there is a schedule of the amounts contracted for by *Weaver,* to be received from several different persons, at various points on the canal; among which was a lot of corn of 15,000 bushels, which *Weaver* had purchased of *Scott,* and which was to be taken at *Scott's* warehouse, at *Granville.* On the 16th of *May,* 1853, *Rogers, Reynolds* and *Martin* assigned the contracts to *Smith* and *Hunt,* the plaintiffs, "guaranteeing the delivery of the corn." Plaintiffs, in their complaint, aver that although they were ready, &c., to receive the corn at the several points designated, &c., the defendants wholly failed to deliver, or cause to be delivered, a large portion thereof, viz., the 15,000 bushels specified in the schedule as deliverable at *Scott's* warehouse, &c.

Defendants answered. Their answer alleges that, after the assignment of the contract and the execution of the guaranty, viz., on the 16th day of *May,* 1853, and between that day and the first of *December* then next following, the plaintiffs received from *Andrew Scott* 15,000 bushels of corn, which was then and there applicable to, and was on

VOL. XIV.—15

account of, the consideration of said contract. Reply in denial of the answer. The issue was submitted to the Court, who found for the plaintiffs 1,122 dollars, and having refused a new trial, rendered judgment, &c. The plaintiffs appeal to this Court.

The evidence shows that *Smith* and *Hunt*, the plaintiffs, at the time they became the assignees of the *Weaver* contract, were the holders of a contract made by *Scott* to themselves, for the delivery of 4,000 bushels of corn, during the same season in which the corn on the *Weaver* contract was deliverable; but it was not shown that either *Weaver* or *Rogers, Reynolds* and *Martin*, had notice of the plaintiffs' contract with *Scott*; nor does it appear that any corn had been delivered on either contract, until after the defendants had executed the assignment and guaranty. The evidence further shows that *Scott*, who had full notice of the *Weaver* contract, and its assignment to the plaintiffs, in the years 1853 and 1854, delivered to them 12,757 bushels of corn, without applying the amount delivered to either contract, but leaving such application to the plaintiffs, who applied it first in discharge of their contract with *Scott* for the delivery of 4,000 bushels, and secondly to the discharge of the *Weaver* contract, assigned to them by the defendants. It also appears that the application thus made, produced a deficit in the delivery of corn by *Scott*, on the *Weaver* contract, of 6,048 bushels—the value of which the plaintiffs sought to recover, in this action against the defendants as guarantors. The Court, however, in its finding, applied the 4,000 bushels on the *Weaver* contract, thereby reducing the deficit to 2,048 bushels, which deficit, estimated at 50 cents per bushel, with interest from the 10th of *December*, 1853, makes the finding and judgment. Were the plaintiffs bound to apply the 4,000 bushels, delivered by *Scott*, to the assigned contract? This is the only question to settle in the case. As we have seen, that contract stipulates thus: "The first corn received by *Rogers, Reynolds* and *Martin*, from *Andrew Scott*, shall apply to *Weaver's* contracts with him, until they are filled." Had the same corn been delivered to the defendants before the

assignment and guaranty, it must have been conceded that they would have been bound to apply it to their contract with *Weaver*, even though they held a prior contract with *Scott* for a like number of bushels. And, as assumed by the appellees, the effect of this assignment was to vest in the plaintiffs all the rights, under the contract, which the defendants had as against *Weaver*—subject, however, to its burdens and conditions. 1 Pars. on Cont. 192, *et seq.*—1 Bac. Abr. tit. Assignment, 384.—2 *id.* tit. Covenant, 566.—*Mehaffy* v. *Share*, 2 Penn. R. 361. The plaintiffs then, in virtue of the assignment of the contract, were placed precisely in the same condition, in reference to the stipulation referred to, as that occupied by the defendants before the assignment. It is true, *Scott,* when he delivered the corn, failed to apply the several amounts which he delivered to the plaintiffs, to either contract; and the general rule is, "where the debtor fails to make application to a particular debt, the creditor is allowed to make it;" but this rule is not applicable to the case at bar, because here, the assigned contract held by the plaintiffs, directed how the application of the corn delivered by *Scott,* should be made. *Beach* v. *The State Bank,* 2 Ind. R. 488. It seems to follow that they, plaintiffs, as assignees, were bound to apply the first corn they received from *Scott,* to the *Weaver* contract.

But it is said in argument, that the guaranty upon which this suit was founded has no relation to the contract, so far as it stipulates for the delivery of the corn. We think otherwise. In general, the liability of the guarantor is measured by that of the principal, and will be so construed, unless a less or a greater liability is expressly assumed by the guarantor. 1 Pars. on Cont. 494.—Burge on Suretyship, 4. The guaranty before us, as we construe it, guaranties the delivery in accordance with the defendants' contract with *Weaver.* It makes their liability simply co-extensive with his. As principal in the contract, he had a right to insist that the stipulation above quoted should be held effective against the plaintiffs, as assignees of the contract—that the first corn received by them from

*Scott*, should apply on the assigned contract—and it seems to us that the defendants, as guarantors, were entitled to the same application.   We are of opinion that there is no error in the finding of the Court.

> *Per Curiam.*—The judgment is affirmed.
> *G. S. Orth* and *J. A. Stein*, for the appellants.
> *H. W. Chase* and *J. A. Wilstach*, for the appellees.