**AMERICAN FLETCHER NATIONAL BANK & TRUST COMPANY, Appellant & Cross-Appellee (Plaintiff Below),**

v.

**PAVILION, INC., Milton J. Okum and William L. Schwartz, Appellees & Cross-Appellants (Defendants Below).**

No. 2–580A152.

Court of Appeals of Indiana, Fourth District.

May 3, 1982.

Rehearing Denied June 4, 1982.

Ronald A. Lisak, Indianapolis, for appellant.

A. David Stippler, Byrum, Gagnon, Diehl & Stippler, Indianapolis, Michael A. Kiefer, Garrison & Kiefer, Indianapolis, for appellees.

MILLER, Presiding Judge.

Plaintiff-appellant American Fletcher National Bank and Trust Company (AFNB) appeals the trial court's judgment after a bench trial in favor of defendants-appellees, Milton J. Okum and William L. Schwartz, finding them not liable as guarantors for $56,057.60 due on a promissory note. Okum and Schwartz were shareholders and offi-

cers of the corporate defendant, Pavilion, Inc. (Pavilion), the maker of the note.[1] On appeal AFNB claims: 1) parol evidence was improperly admitted to demonstrate that guaranties executed by Okum and Schwartz did not extend to the note sued upon, and 2) an exhibit offered under the business records exception to the hearsay rule was erroneously excluded. Okum and Schwartz assign two cross-errors. They first argue the trial court erred in vacating its initial order overruling AFNB's motion to correct errors and reentering the order effective at a later date, pursuant to AFNB's motion for relief from judgment, which allowed AFNB to correct its initial failure to file a timely appeal. Okum and Schwartz also contend the trial court erred in refusing to admit computer printout sheets, allegedly generated at AFNB, indicating Pavilion's note was not guaranteed. We find the trial court did not abuse its discretion in vacating and re-entering its denial of AFNB's motion to correct errors or in excluding the computer printout sheets. However, the trial court erred in admitting extrinsic evidence to contradict the clear and unambiguous terms of the guaranty. Based on this latter error, we reverse.

## ISSUES

1) Did the trial court err in vacating and re-entering its order denying AFNB's motion to correct errors, thereby allowing AFNB to correct its initial failure to file a timely appeal?

2) Did the trial court err in admitting parol evidence on Okum and Schwartz's claim the guaranties were represented by AFNB and understood by the parties to extend only to the inventory loans and not the construction loans?

3) Did the trial court err in refusing to admit the memorandum in AFNB's credit file on Pavilion under the business records exception to the hearsay rule?

1. The trial court found Pavilion liable on the note. Pavilion is not appealing that judgment.

2. A complaint was initially lodged not only against Pavilion, Okum and Schwartz but James C. and Martha J. McCoy. The action

4) Did the trial court err in excluding computer printouts allegedly generated by AFNB which suggested the note sued upon was not guaranteed?

## FACTS

AFNB's complaint in two counts alleged Pavilion was liable for its default on a promissory note, and Okum and Schwartz were also liable through their continuing guaranties.[2] Okum and Schwartz's answer alleges: 1) extension of the guaranties to the construction loans was not within the manifest intention of the parties; 2) fraudulent misrepresentation by AFNB regarding the scope of the guaranties and 3) lack of consideration. The trial court specifically found for Okum and Schwartz on the first defense.

The facts in support of the judgment are as follows. In early 1973 Magnavox approached Okum and Schwartz, businessmen and residents of Cincinnati, Ohio, about opening a Magnavox Home Entertainment Store in the Castleton Square Shopping Center in Indianapolis. Okum and Schwartz agreed and together with Cal McCoy formed a corporation, Pavilion, for that purpose. Each contributed $10,000 in capital and took positions as the sole officers and shareholders of Pavilion. Sometime during the spring of 1973 they approached AFNB and began finance negotiations for the enterprise.

On October 4, 1973 Okum and Schwartz executed a $25,000 promissory note in Pavilion's name with AFNB to finance a construction contract with Charles C. Brandt Co. for preparation of the space leased at Castleton Square. On October 3, 1973 and October 4, 1973 Okum and Schwartz, respectively, executed instruments with AFNB clearly labeled "CONTINUING GUARANTY," which contained the following provision:

against the McCoys was dismissed with prejudice after they were discharged in bankruptcy by the United States District Court for the Southern District of Indiana.

"In consideration of any loan or other financial accommodation *heretofore or hereafter at any time granted to Pavilion, Inc.* ('Borrower') by American Fletcher National Bank and Trust Company ('Bank'), the undersigned unconditionally guarantees the full and prompt payment when due, whether by acceleration or otherwise, and at all times thereafter *of all obligations of the borrower to the bank*, howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, or *now or hereafter existing*, or due to become due...." (Emphasis added.)

On November 5, 1973 Pavilion cancelled the $25,000 note by renewal in the principal sum of $46,295. This latter note forms the basis for this cause of action. The evidence also reveals Pavilion had initially obtained inventory financing through American Acceptance Corporation as recommended by Magnavox. However, on October 24, 1974 in order to obtain better interest rates on its inventory financing Pavilion borrowed $52,928.45 from AFNB as evidenced by a separate promissory note. Pavilion has paid this note in full.[3]

Both Okum and Schwartz testified they did not read the instruments before they signed them and the instruments were in blank form at the time of signing.[4] Rather, at trial and in their depositions published at trial, Okum and Schwartz testified they executed the instruments in blank upon bank officer Heisner's representations "that he was keeping a file for future inventory" acquisitions. Additionally, Okum and Schwartz testified Heisner agreed no guaranty was necessary for the construction loans since there was sufficient equity in the store. According to Okum, Heisner assured him that he and Schwartz were not personally liable for the construction loan, and any guaranties were limited to inventory loans.

In the margin of all three notes are boxes labeled "C" and "S" which an AFNB loan officer, Roberts, testified were available to indicate whether the note was collateralized or had a surety. Neither of these boxes on either of the construction notes is activated. On the other hand both boxes on the note for the inventory loan are activated. Regarding these boxes, Roberts testified as follows:

"Q. Okay. Does this note indicate whether it is secured or unsecured? Collateralized or uncollateralized?

A. The face of the note provides no facility for making such an indication.

Q. What is this—what are these little boxes over to the side that say "C" and "S"? What do they refer to?

A. The "C" stands for collateral. The "S" stands for a surety.

Q. Alright. So the "C" stands for collateral, "S" for surety.

A. Yes.

Q. Are either of those boxes activated? Checked marked?

A. No."

There was no further testimony at trial indicating the significance of these boxes on the notes.

Attempts were made, however, by counsel for Okum and Schwartz, to introduce computer printout sheet allegedly generated by AFNB and received by Pavilion through the mail. The printouts purported to be a current summary of their account and, according to an offer to prove, charac-

3. The record reveals two additional continuous guaranties were also executed by Schwartz on March 28th of 1974 and April 26 of 1974 for the amounts of $15,000 and $50,000 respectively. AFNB did not sue on these guaranties.

4. Okum and Schwartz do not contend the guaranties were void or voidable due to an absence of material provisions at the time of execution. In their answer they admit the continuing guaranties attached to AFNB's complaint as exhibits, which show the blanks filled in, are "true and correct copies of each of the instruments of guaranty as executed" by Okum and Schwartz. At trial, the court admitted the guaranties over Okum and Schwartz's objection. This objection, however, was based solely on the grounds of relevancy. Furthermore, the guaranties contained only three blanks: the date, corporation name, and dollar limitation on liability. The subject-matter of these blanks as filled in are not in dispute.

terize the construction note "as an unsecured direct obligation of the corporation," and the inventory loan as secured and guaranteed. AFNB's objection alleging the document was not properly authenticated was sustained by the trial court.

Heisner did not testify and the only witness for the bank was Roberts, who was Heisner's replacement at AFNB. During Roberts' testimony, AFNB attempted to admit Exhibit "G," purportedly a memorandum made by Heisner and placed in AFNB's credit file on Pavilion. In the margin of the exhibit is the date of October 17, 1973, the entry date. The body of the memorandum, however, begins with the date of October 5, 1973 and states that Heisner "agreed to lend the company up to $47M for four years at the rate of small base plus 3% guaranteed by Mr. Schwartz, Mr. Okum and Mr. McCoy without their wives." Typed in the lower right hand corner is "J. E. Heisner/jm." Roberts testified the original of this credit memo appears in AFNB's file, and he has supervision and control over the credit files kept in the ordinary course of AFNB's business. Okum and Schwartz objected to the admission of this exhibit alleging Roberts had no personal knowledge of its contents and he was not the custodian of those records at the time it was prepared. They also allege Roberts' failure to demonstrate Heisner's unavailability for testimony. AFNB argued the exhibit qualified under the business records exception to the hearsay rule. The trial court excluded the exhibit and AFNB made an appropriate offer to prove.

The trial court entered judgment in favor of AFNB in its action against the corporate defendant Pavilion, Inc. but against AFNB in favor of Okum and Schwartz, and issued the following Findings of Fact, in pertinent part:

"4. That the Defendant, Milton J. Okum, executed a certain instrument of guaranty in blank form, dated October 3, 1973, in consideration of the financial accommodation by AFNB to Pavilion up to an amount not to exceed One Hundred Thousand Dollars ($100,000.00), for future inventory acquisitions by Pavilion as a Magnavox Home Entertainment Center.

5. That the Defendant, William L. Schwartz, also executed a certain instrument of guaranty in blank form, dated October 4, 1973, in consideration for the financial accommodation by AFNB to Pavilion up to an amount not to exceed One Hundred Thousand Dollars ($100,000.00), for future inventory acquisitions by Pavilion as a Magnavox Home Entertainment Center.

. . . . .

8. That the face of each of the aforesaid respective notes, dated October 3, 1973, and November 5, 1973, respectively, by Pavilion to AFNB, according to custom and usage in banking procedures by AFNB's commercial loan division, clearly indicates that said notes were non-collateralized and non-guaranteed by either Pavilion and/or the Defendants Okum and Schwartz at the time of their execution and that it was not within the manifest intention of the parties hereto that the instruments of guaranty executed by Okum and Schwartz be extended to the indebtedness of Pavilion represented and sued upon by AFNB herein.

That AFNB has failed to submit any evidence to controvert the essential character of the above said note indebtedness as non-collateralized and non-guaranteed."

On September 24, 1979 AFNB timely filed its Motion to Correct Errors. The motion was denied and entered in the Order Book as denied on October 26, 1979. Notice issued to AFNB by the Clerk of Court, however, was dated October 29, 1979 in letterhead form in the upper right hand corner. On November 26, 1979 AFNB timely filed a praecipe for the record of proceedings. The Clerk of the Indiana Court of Appeals refused the record as being tendered more than 90 days from the date of judgment or ruling on the motion to correct errors.

On February 22, 1980 AFNB filed a motion for relief from the judgment, pursuant to Ind. Rules of Procedure, Trial Rule 60(B),

requesting the trial court to vacate and re-enter its denial of AFNB's motion to correct errors.[5] The motion asserted that the form of notice advising AFNB of the court's ruling was inadequate and misleading and that AFNB had reasonably relied on the date contained in the notice from the clerk of the trial court. In support of its motion AFNB's attorney submitted an affidavit which stated as follows:

"Upon the receipt of the record of the proceedings in this case, I reviewed the same but the fact that the court's entry overruling AFNB's motion to correct errors was dated and the record of proceedings has October 26, 1979, brought nothing to my attention for the reason that I had already computed the time requirements in reliance upon the clerk's notice and found no reason to compare the Record of the Proceedings with the clerk's notice and recompute the time requirements a second time."

After a hearing, the trial court granted AFNB's motion and vacated and re-entered its order overruling the motion to correct errors as of March 21, 1980. Thereafter, AFNB timely filed its praecipe and perfected this appeal. The trial court overruled Okum and Schwartz's subsequent motion to correct errors which alleged error in granting AFNB's motion for relief from the judgment.

## DISCUSSION AND DECISION

### Motion For Relief From Judgment

■ A threshold issue in this case is presented by Okum and Schwartz's cross-error alleging the trial court erred in granting AFNB's T.R. 60(B) motion for relief from judgment. AFNB's motion was grounded on the clerk's misrepresentation of the date of the court's original denial of the motion to correct errors. The notice prepared by the clerk was dated October 29, 1979, whereas the order book entry indicated AFNB's motion was overruled October 26, 1979. The trial court's ruling changed the date of the original denial of

the bank's motion to correct errors from October 26, 1979 to March 21, 1980. AFNB was thereby allowed to correct its failure to file a timely appeal.

Okum and Schwartz rely principally on Ind.Rules of Procedure, Trial Rule 72(D) which provides in pertinent part as follows:

"Immediately upon the entry of a ruling upon a motion, an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. <u>Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed,</u> except as permitted in the Appellate Rules...." (Emphasis added.)

The underscored portion of the trial rule was raised in an analogous case, *Soft Water Utilities, Inc. v. LeFevre,* (1973) 261 Ind. 260, 301 N.E.2d 745, where a praecipe was not timely filed. In that case, Soft Water timely filed its motion to correct errors and then contacted the clerk of court ten days later to determine if a ruling had been entered. The clerk misinformed Soft Water stating the motion to correct errors had not been received when in fact on that date the motion had been overruled by the trial judge. Soft Water forwarded two more copies of the motion and wrote the trial judge who finally informed Soft Water that the motion had already been overruled. By the time it had been so informed by the trial court, the time for Soft Water to file its praecipe had expired. Soft Water filed a T.R. 60(B) motion for relief from judgment which was granted by the trial court. The Supreme Court held that while a lack of notice alone might not automatically re-

---

**5.** AFNB had originally requested a nunc pro tunc entry changing the date of the overruling of the motion to correct errors to October 29, 1979. The trial court denied this motion.

quire reopening of the judgment, a lack of notice coupled with misinformation from a court official presented sufficient good cause for granting equitable relief under T.R. 60(B).[6]

The recent decision in *First National Bank & Trust Co. of Crawfordsville v. Coling*, (1981) Ind.App., 419 N.E.2d 1326, resulted in a similar holding. In *Coling* the party was not notified of the trial court's ruling on the motion to correct errors. After the expiration of the time to file a praecipe, the parties reaffirmed an agreement to orally argue the motion to correct errors and were awaiting a date from the trial court for argument. Seven months after the court's ruling the plaintiff filed a motion for relief from judgment under T.R. 60(B)(1) asserting mistake, surprise and excusable neglect and requesting the trial court to set aside its order. In upholding the trial court's decision to grant plaintiff's T.R. 60(B) motion, the Court of Appeals stated:

> "A motion under T.R. 60(B) is addressed to the equitable discretion of the court. *Soft Water Utilities, Inc. v. LeFevre, supra*; .... The scope of appellate review of the granting or denial of a T.R. 60(B) motion is limited to the question of whether or not the trial court abused its discretion. [Citations omitted.]
>
> 'An abuse of discretion will be found only where the court's conclusion and judgment is an erroneous one, 'one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable probable and actual deductions to be drawn therefrom.'" (Citations omitted.)

*Id.* at 1330–31. Under the circumstances, the *Coling* Court could not say the trial court abused its discretion as a matter of law. Even given the clear language of T.R. 72(D), it therefore appears under mitigating circumstances the trial court can relieve a party who received misleading notice of a ruling on their motion to correct errors. In the instant case the form of notice provided by the clerk of court was sufficiently misleading to justify the trial court's relief.

### Parol Evidence

In their answer and at trial, Okum and Schwartz claimed 1) the extension of the guaranties to the construction notes was not within the manifest intention of the parties and 2) AFNB induced them to execute the guaranties by fraudulent misrepresentations regarding their scope.[7] At trial, counsel for Okum and Schwartz propounded the following question to Schwartz: "Now with respect to the guarantee [sic] document, you've stated you don't recall when it was signed. Did the bank indicate anything to you when they presented the guarantee [sic] document to you as to what it was for?" AFNB objected claiming the guaranty was unambiguous and therefore parol evidence was inadmissible to vary its terms. The trial court allowed Okum, and later Schwartz,[8] to testify regarding conversations during which Heisner allegedly represented the guaranties were limited in scope to future loans made for inventory acquisitions.

We observe at the outset that contracts of guaranty are subject to the same rules of interpretation as contracts in general. 14 I.L.E. *Guaranty* § 21 (1959). In the absence of ambiguity, the construction

---

6. Significantly, in addressing the mandatory time limits for perfecting an appeal contained in the appellate rules, our Supreme Court observed:

> "To hold that an appeal is forfeited *ipso facto* when no praecipe is filed within thirty days of the court's ruling on the motion to correct errors, regardless of whether notice was ever issued or regardless of any other circumstances anticipated by T.R. 60, would raise substantial constitutional questions concerning such procedure in light of the guarantee

of the right to appeal. Art. 7, § 6, Constitution of the State of Indiana."
*Id.* at 269, 301 N.E.2d at 750.

7. In their answer, Okum and Schwartz also alleged the guaranties were not supported by sufficient consideration. They do not argue in support of this latter defense in their brief and we find no evidentiary support for this allegation.

8. AFNB lodged a continuing objection based on the parol evidence rule.

of an integrated written contract is a question of law to be resolved by the trial court. *E.g., Pearson v. First National Bank of Martinsville,* (1980) Ind.App., 408 N.E.2d 166; *House of Lesow,* (1975) 167 Ind.App. 449, 339 N.E.2d 86.

■ AFNB first argues the contract of guaranty must be construed independently. Okum and Schwartz, however, contend the guaranties must be construed in conjunction with the note executed the same day, under the general rule requiring construction of contemporaneous instruments as a single transaction. This general rule is stated in 14 I.L.E. *Guaranty* § 21, (1959) as follows:

> "Where the guaranty consists of separate instruments, or other instruments constituting parts of the same transaction are either by annexation or reference constituted a part of the guaranty, such instruments should be read together and each construed with reference to the other."

*Id.* at 578. Under the application of this rule, we find the guaranties in the instant case are independent instruments which cannot be construed with reference to the promissory notes.

We first note the instrument sued upon was executed over one month after the guaranties. We will entertain Okum and Schwartz' argument, however, in recognition of the fact that this note was a renewal of the note executed on the same day as the guaranties. We nevertheless remain unpersuaded. A similar argument was advanced and rejected in *International Multifoods Corp. v. D & M Feed & Produce, Inc.,* (1979 D.Neb.) 470 F.Supp. 654, where the guarantor contemporaneously executed a promissory note for $10,000. The guaranty, however, extended to "all indebtedness" and was not limited to $10,000. The guarantors were indebted to the guarantee on an additional promissory note and on an open account but argued the contemporaneous nature of the guaranty and the $10,000 promissory note indicated they were a single instrument evidencing a limit on their liability to $10,000. The Court found the instruments were in fact independent:

> "Appellants speak of interpreting contemporaneous instruments as though they were one. The correct doctrine in this regard means that if there is a provision in one instrument affecting a provision of another, they will be given effect as between the parties and all who are charged with notice so that the whole agreement actually made may be determined and effectuated. It does not mean that a provision of one document is imported bodily into another contrary to the intent of the parties or the express provision of the latter. They may be intended to be separate writings though made at the identical time by the same parties and to provide for entirely different things. The statement that contemporaneous instruments may be treated and interpreted as one means only that this will be done when it will effectuate the intention and if the provisions of the two instruments if put together will not be incompatible. *The court may not do violence to a complete, unambiguous contract by consolidating it with another writing if the effect of doing so would be to avoid an essential part of the contract.* If contracts or writings are in effect independent they should not be construed together even though the same parties and the same subject matter may be concerned. Two instruments relating to distinct subjects or things should not be construed together to determine the intent and transaction of the parties though made at the same time and though they relate to the same transaction because both must have the same object in order to be taken together as evidencing the same thing." (Emphasis added.)

*Id.* at 657, *quoting Gerdes v. Omaha Home for Boys,* (1958) 166 Neb. 574, 585–86, 89 N.W.2d 849, 856.

As in *International Multifoods,* the guaranties here must be construed independently. There is no reference in the guaranties to the promissory notes or to any other specific documents. This case is therefore readily distinguishable from *Smith v. Oster-*

*meyer Realty Co.,* (1935) 102 Ind.App. 164, 197 N.E. 743 (guaranty contained specific reference to lease), and *Globe Cartage Co., Inc. v. Farmer & Ochs Co.,* (1940) 108 Ind. App. 247, 27 N.E.2d 121 (specific reference to conditional sale agreement on reverse side of assignment guaranteeing performance of agreement which also included reference to notes.) The object of the guaranties executed by Okum and Schwartz differed from the object of the promissory notes. The guaranties gave rise to and broadly extended the obligations of Okum and Schwartz beyond the indebtedness of any single promissory note. We cannot violate the terms of the guaranties by construing them with incompatible and distinct documents. *International Multifoods Corp. v. D & M Feed & Produce, Inc., supra.*

Once we have determined the guaranties were independent and integrated instruments, the parol evidence rule is applicable:

"When the parties to a contract of guaranty have reduced their agreement to writing which is complete and not uncertain or ambiguous, the writing will be presumed to contain the entire agreement, and parol or extrinsic evidence is inadmissible to vary the terms of the written instrument.... The exclusionary aspects of the parol evidence rule have been justified on the basis of reliance by the parties on the written document, and that to remove this reliance would destroy the confidence on which modern business has been built." (Footnotes omitted.)

38 Am.Jur.2d *Guaranty* § 124 (1968). Generally stated, parol evidence is admissible to prove a defect in the execution of a contract, such as contracts generated by fraud, mistake, ambiguity, illegality, duress or undue influence. *Hauck v. Second National Bank of Richmond,* (1972) 153 Ind.App. 245, 286 N.E.2d 852. It is also generally stated that parol evidence is admissible to apply a contract to its subject-matter. In the instant case, the arguments at trial indicate the court relied on this latter principle as stated in *Wills v. Ross,* (1881) 77 Ind. 1, a case relied upon by Okum and Schwartz at trial. In that case, however, the guarantor, Peter Wills, executed a letter to a merchant, stating as follows: "Give John a little more time and I will see that you get your money." *Id.* at 3. Parol evidence was therefore admitted to show that the debt guaranteed was one incurred by John Wills in Peter Wills's presence when the merchant refused to extend John credit except upon Peter's oral guarantee. Since the later guaranty was in writing, and therefore in compliance with the statute of frauds, the Supreme Court found extrinsic evidence of the oral promise was admissible to identify the subject-matter generally described in the written guaranty. *Wills,* therefore, comports with the general rule admitting parol evidence *to explain an ambiguity,* including those concerning the subject-matter of the contract:

"[W]here the subject matter of the writing is *imperfectly described therein* or the description is in some respects inaccurate, ambiguous, or very general in character, parol evidence may be competent to aid the description and identify the subject matter to which it is intended to apply and to apply the description to such subject matter by extrinsic evidence *not inconsistent with what is written.*" (Emphasis added.) (Footnotes omitted.)

32A C.J.S. *Evidence* § 1007(1) at 577 (1964). Parol evidence applying a contract to its subject-matter is admissible for clarification, not contradiction. Parol evidence is therefore inadmissible to identify the subject-matter of a contract when that evidence is inconsistent with the writing. *Id.* at 581.

Consequently, where the instrument is susceptible of a clear and unambiguous construction, *Hauck v. Second National Bank of Richmond, supra,* parol evidence is inadmissible. As explained in *Hauck,* Indiana adheres to the "four corners rule" for the construction of written instruments, which limits a determination of the intent of the parties to the express language found within the four corners of the instrument, if unambiguous.

In the case at bar Okum and Schwartz offered extrinsic evidence to show their guaranties were intended to be confined to inventory loans. However, the guaranty clearly covered "*all* obligations... now or hereafter existing." Courts have repeatedly rejected similar attempts to admit parol evidence limiting the scope of similar language in a contract of guaranty. *Annot.*, 33 A.L.R.2d §§ 27, 28 (1954). Each instrument in the instant case repeatedly characterized itself as a continuing guaranty. They were unambiguous and certain as to their object and extent. It is equally clear the extrinsic evidence sought to vary or add to the express language of the document, and was therefore inadmissible. *Hauck v. Second National Bank of Richmond, supra; International Multifoods Corp. v. D & M Produce, Inc., supra.*

We must therefore agree with AFNB that the trial court erred in considering parol evidence in determining the intent of the parties. The trial court was apparently under a mistaken view of the law regarding the admission of parol evidence to apply a contract to its subject-matter. The express language of the guaranty clearly indicated it extended to both inventory and construction loans.[9] We therefore conclude the trial court clearly erred in finding that extension of the guaranties to the construction loans was not within the manifest intention of the parties.

Okum and Schwartz additionally contend the admission of parol evidence and the trial court's final judgment was supported by evidence demonstrating they were induced to enter into the guaranties by fraud. Although the court's aforementioned findings of fact do not contain a finding on the defense of fraud, but only

erroneously found the extension of the guaranties to the construction notes was not within the manifest intention of the parties, it is our duty pursuant to T.R. 52(D)[10] to apply the findings to the matters they deal with and view the judgment as based upon a *general* finding as to any other matters or issues. We must therefore determine whether any theory, supported by the evidence and not contrary to the special findings, will support the judgment for Okum and Schwartz. *Cox v. Ubik*, (1981) Ind.App., 424 N.E.2d 127; *Reffeitt v. Reffeitt*, (1981) Ind.App., 419 N.E.2d 999; *Dolph v. Mangus*, (1980) Ind.App., 400 N.E.2d 189. We will therefore address Okum and Schwartz's contention that AFNB misrepresented the scope of the guaranties and thereby fraudulently induced them to execute these instruments.

The parol evidence rule presupposes the existence of a valid writing; it does not preclude the admission of evidence of fraud which would render the writing invalid. Parol evidence of fraud is admissible because it does not seek to contradict the writing, but to destroy the legal effect of the instrument. 32A C.J.S. *Evidence* §§ 972, 979 (1964).

In Indiana, fraud is generally defined as a material representation of a past or existing fact which was untrue and known to be untrue by the party making it, or recklessly made, and justifiedly relied upon by the other party to his or her detriment. *E.g., Plymale v. Upright*, (1981) Ind. App., 419 N.E.2d 756. To avoid a contract, a party must not only demonstrate the *fact of reliance* on a misrepresentation, but the *right of reliance. Frenzel v. Miller*, (1871) 37 Ind. 1; *Plymale v. Upright, supra.*

---

9. In their brief, Okum and Schwartz contend AFNB waived their objection to parol evidence by failing to object at one point in the proceedings. Assuming, *arguendo*, their latter contention is true, the parol evidence rule is one of substantive law which prohibits both the trial court and this Court from considering such evidence even though it was admitted at trial without objection. *Seastrom, Inc. v. Amick Constr. Co.*, (1974) 161 Ind.App. 309, 315 N.E.2d 431.

10. T.R. 52(D) provides in pertinent part:

"... findings of fact with respect to issues upon which findings are not required shall be recognized as findings only upon the issues or matters covered thereby and the judgment or general finding, if any, shall control as to the other issues or matters which are not covered by such findings."

"The right of reliance is more difficult to determine for the reason it is tightly bound up with the duty of a representee to be diligent in safeguarding his interests. The legal obligation that a person exercise the common sense and judgment of which he is possessed is a practical limitation on the actionability of various representations.... [W]here persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment. *Gatling v. Newell* (1857) 9 Ind. 572.

Common sense dictates, and our system of jurisprudence requires ... that parties engaged in the negotiation of a contract ... be obliged to protect their interest by reading the attendant documents before signing. In *Robinson v. Glass*, (1883) 94 Ind. 211, 212, the Supreme Court stated:

'A man who can read and does not read an instrument which he signs is, as a general rule, guilty of negligence, and so he is, if, being unable to read, he neglects to exercise ordinary prudence in requiring the instrument to be read to him.'

.... The principle is applied to discourage reliance upon representations which are made by parties with conflicting interests regarding the character or contents of the document being signed."

*Plymale v. Upright*, at 762. *See, e.g., Wood v. Wack*, (1903) 31 Ind.App. 252, 67 N.E. 562, where one of the parties to a contract for construction of an electric light plant was held to the terms of the writing when he failed to read the contract drafted by the other party, although the other party falsely represented that the terms of their negotiations were fully contained therein. It has long been the law in Indiana that a contracting party has no right to rely upon the statements of the other regarding the character or contents of a written instrument, in the absence of a fiduciary relationship or in the absence of trick or artifice preventing a party from reading the instrument. This is particularly true where the contract is not one of adhesion, and the parties are dealing at arm's length. 14 I.L.E., *Fraud* §§ 21–24 (1959).

■ Moreover, representations regarding the legal effect of an instrument are inactionable as a matter of law. *Plymale v. Upright, supra.* As stated in *Clem v. New Castle & Danville Railroad Co.*, (1857) 9 Ind. 488, 489: "Every person is presumed to know the contents of the agreements which he signs, and has, therefore, no right to rely on the statements of the other party as to its legal effect." Although such representations may be designed to deceive, they are inadequate for that purpose since the instruments belie the misrepresentation. *Id.*

■ Significantly, in the instant case, Okum and Schwartz were well-educated and experienced businesspersons who had owned and managed similar retail stores in Ohio. AFNB did not solicit Okum and Schwartz's business; rather Okum and Schwartz approached AFNB regarding financing and were dealing with AFNB at arm's length. According to their testimony, they negotiated extensively with AFNB regarding both the guaranties and the loans, but relied solely upon Heisner's alleged representations regarding the scope of the instruments without even reading them. The guaranties, however, were explicit on this point. Assuming Heisner made the alleged representations, we do not believe they were actionable.

A similar situation was found inactionable in *Plymale v. Upright, supra*, where an experienced real estate buyer, without reading the standard proposal to purchase, relied upon a real estate agent's alleged representations that an offer to purchase effected a transfer of ownership to the property. The Court first observed that whether certain statements were made and justifiably relied upon are generally questions of fact given conflicting evidence. This general principle is subject to qualification:

"However, when the form of the statements and the subject matter regarding which, or the circumstances in which they were made are such that the statements cannot be construed as anything but an expression of opinion or belief, or a repre-

sentation of law, it is proper for the court to so find and to refuse to submit the cause to the jury. 37 C.J.S. *Fraud* §§ 55, 124."

*Id.* at 760–61. With this qualification in mind, the *Plymale* Court held:

"Although we will not ignore an intentional fraud practiced on the unwary, we will, in most cases, require the exercise of reasonable prudence in business transactions by professionals who are dealing at arm's length. Thus we are constrained to hold that the essential representation cannot be construed as anything but a representation as to the legal effect of an instrument, i.e. a mere opinion, and as such the representation is inactionable i.e. the plaintiffs had no right to rely upon it as a matter of law."

*Id.* at 768. In Indiana, a party to an arm's length transaction clearly has no right to rely upon another party's representations regarding the legal effect of an unambiguous instrument.[11] We must therefore conclude the trial court's judgment in favor of Okum and Schwartz was clearly erroneous.

*Exclusion of Defendant's Exhibit No. 1—Computer Print Out Sheets*

Okum and Schwartz appear to raise an additional cross-error in the argument section of their answer brief. Beginning on page 26, the end of their argument supporting the trial court's admission of parol evidence, they argue it was "manifestly unfair," to refuse admission of computer sheets allegedly generated by AFNB which indicate the construction loans were not guaranteed. In this regard it would seem that the evidence is merely cumulative, since the notes themselves and Roberts' testimony at trial indicate that neither the "C" nor the "S" boxes were activated.

Additionally the argument in Okum and Schwartz's brief lacks cogency and the assignment of their cross-error should have been initially included in the issue section of their brief.

11. Several other jurisdictions have similarly held that parol evidence is inadmissible when the alleged fraud concerns a promise or representation directly at variance with the terms of the writing. 32A C.J.S. *Evidence* § 979 (1964).

"If a cross-appeal is filed, the plaintiff in the court below shall be deemed the appellant for the purpose of this rule, unless the parties otherwise agree or the court otherwise orders. *The brief of the appellee shall contain the issues and argument involved in his appeal* as well as the answer to the brief of the appellant." (Emphasis added.)

Ind.Rules of Procedure, Appellate Rule 8.3(D). The above provision of the appellate rules was in effect in 1980, when Okum and Schwartz filed their brief.

Given our holding in favor of AFNB based on the trial court's erroneous consideration of parol evidence, we need not address AFNB's additional contention that their memorandum was erroneously excluded from evidence.

Reversed.

CONOVER and YOUNG, JJ., concur.

*E.g., Bernstein v. Financial Indemnity Co.,* (1968) 263 Cal.App.2d 324, 69 Cal.Rptr. 543; *Dahmes v. Industrial Credit Co.,* (1961) 261 Minn. 26, 110 N.W.2d 484.