John V. LOUDERMILK,
Defendant-Appellant,

v.

Lawrence J. CASEY and Alvin M. Weintraub, Plaintiffs-Appellees.

No. 1–182A1.

Court of Appeals of Indiana,
First District.

Nov. 16, 1982.

Stephen M. Gentry, Indianapolis, Melvin R. Lind, Lind, Deckard & O'Brien, Danville, for defendant-appellant.

Theodore J. Nowacki, Bose, McKinney & Evans, Indianapolis, John M. Howard, Jr., Howard & Lawson, Danville, for plaintiffs-appellees.

NEAL, Judge.

### STATEMENT OF THE CASE

Lawrence J. Casey (Casey) and Alvin M. Weintraub (Weintraub), the plaintiff-appellees, filed this action in the Hendricks Circuit Court to recover on guaranties executed by John V. Loudermilk (Loudermilk), the defendant-appellant. Loudermilk had guaranteed payment of two promissory notes of Wernert J. Pitterich (Pitterich) which Pitterich issued in order to purchase stock under a written agreement with Casey and Weintraub. The trial court entered summary judgment in favor of Casey and

Weintraub in the amount of $32,261.84 plus $4,000 for attorneys' fees. Loudermilk appeals, raising several issues regarding the interpretation of the guaranties and the award of attorneys' fees.

We affirm in part and reverse and remand in part.

## STATEMENT OF THE FACTS

Casey, Weintraub and Pitterich were three of the twelve shareholders of Fleetwood Investment Company (Fleetwood), a Michigan corporation. Fleetwood's only assets were the issued and outstanding capital stock of A.C.E. Freight, Inc. (A.C.E.), an Ohio corporation which held an operating certificate and operated as a motor common carrier pursuant to authority issued by the Interstate Commerce Commission. Pitterich entered into a sale agreement with the other eleven Fleetwood shareholders whereby he agreed to purchase all of their shares of Fleetwood stock. The trial court made the following findings of fact regarding the sale of the stock.

"1. On or about December 18, 1974, Wernert J. Pitterich ('Pitterich') entered into a written agreement with the owners of 80% of the capital stock of Fleetwood Investment Company ('Fleetwood'), wherein Pitterich, who was then the owner of 20% of Fleetwood's stock, agreed to purchase all of the other outstanding shares of Fleetwood. The Plaintiffs, who each owned 3.75% of such stock, were parties to such agreement.

2. In consideration of the sale of the Plaintiffs' stock to Pitterich, Pitterich promised to pay to each of the Plaintiffs the sum of $22,500 in 107 equal successive monthly installments, together with interest at the rate of 6% per annum. Pitterich's obligation to the Plaintiffs to pay the purchase price was evidenced by promissory notes dated December 18, 1974 (the 'Notes') under which Pitterich assumed no personal liability. Instead, the Notes were secured by a pledge of the

Fleetwood stock being purchased, as evidenced by a written pledge agreement dated December 18, 1974 and by written guaranties of the Defendant, John V. Loudermilk ('Loudermilk'), in favor of the Plaintiffs, under the express terms of which Loudermilk unconditionally and primarily guaranteed the payment of the Notes (the 'Guaranties').

3. Under the terms of the pledge agreement, Pitterich retained all rights of ownership in the Fleetwood stock, including the right to vote such stock.

4. There is due and owing to each of the Plaintiffs as of July 17, 1981 the sum of $16,130.92, as follows:

| | |
|---|---|
| Principal | $14,299.08 |
| Interest | 1,831.84 |
| TOTAL: | $16,130.92" |

Of all the shareholders only Casey and Weintraub demanded any security in addition to the stock and the notes. Loudermilk executed two guaranties, one to Casey and one to Weintraub,[1] on December 18, 1974. These guaranties read as follows:

"AGREEMENT, by and between Lawrence Casey and John Loudermilk of Indianapolis, Indiana.

WHEREAS, Casey, as a stockholder of Fleetwood, has entered into a contract with Wernert Pitterich for the sale of his 3,750 shares of Fleetwood to said Pitterich; and

WHEREAS, in order to induce Casey to execute the agreement for the sale of his stock, and to accept the promissory note of Pitterich of even date herewith, Loudermilk has agreed to guarantee the payment of Pitterich's obligation to Casey as evidenced by said promissory note. NOW, THEREFORE, in consideration of the payment of $1.00 by Casey to Loudermilk, and other good and valuable consideration, Loudermilk unconditionally and primarily guarantees the payment of the promissory note of Pitterich of even date herewith made in favor of said Casey,

1. The guaranties were identical except for the name of the stockholder; the guaranty issued to Casey is used here.

and each installment thereof, together with the interest provided therein, in accordance with the terms and conditions of said promissory note.

/s/ John V. Loudermilk"

On or about November 16, 1976, Pitterich and Loudermilk ended their business relationship, and on November 17, 1976, Pitterich executed an indemnification agreement to Loudermilk with specific reference to the guaranties. After November 17, 1976, Pitterich sold the operating authority of A.C.E. to Kroblin Transportation Systems, Inc. (K.T.S.). In effect, this sale gave K.T.S. the practical power to control Fleetwood. K.T.S. assumed Pitterich's obligation to Casey and Weintraub and continued making payments through June 1979, after which time the payments ceased. In December 1979, Casey and Weintraub sent to Loudermilk their written demand for payment of the balance due on the notes. Loudermilk made no payment, and this action was filed.

Casey and Weintraub filed a motion for summary judgment with accompanying affidavits, and Loudermilk filed affidavits in response. Loudermilk's affidavit stated that he had provided financial assistance to Pitterich in the latter's operation of A.C.E. Loudermilk stated he was informed that Casey and Weintraub would not sell their shares without guaranties from him, and he executed the guaranties at the same time the other documents were executed. According to his affidavit,

"... It was agreed by all the parties to these documents that Pitterich would not be personally liable thereunder, but that all installments would be paid out of the profits derived from his operation of A.C.E. Freight, Inc. If the profits were not sufficient to pay the installment payments and Pitterich defaulted thereon, the Sellers would re-acquire their Fleetwood stock from the escrow agent. The reacquisition of the stock was to be the Seller's sole remedy under the Sales Agreement in case of default. The execution of the guaranty agreements was to satisfy the Plaintiffs that Affiant could

obtain no greater right to the Fleetwood Stock than Pitterich. Conversely, I was to assume no greater liability than Pitterich."

The affidavit further stated the bases of Loudermilk's affirmative defenses of payment, release, and lack of consideration.

The trial court entered summary judgment in favor of Casey and Weintraub.

## ISSUES

Loudermilk raises nine issues for our review, and we condense those nine into the following six:

I. Whether the terms of the guaranty are ambiguous and therefore create a genuine issue of material fact which cannot be resolved by summary judgment;

II. Whether as a matter of law Loudermilk was personally liable for the unpaid balance of the promissory notes when Pitterich was not personally liable on the notes;

III. Whether Loudermilk's affidavit created a genuine issue of material fact regarding his defense of lack of consideration; ·

IV. Whether Loudermilk's affidavit created a genuine issue of material fact regarding his defense of release;

V. Whether Loudermilk's affidavit created a genuine issue of material fact regarding his defense of payment; and

VI. Whether the court's award of $4,000 in attorneys' fees was excessive.

## DISCUSSION AND DECISION

We begin by stating our standard of review for summary judgments. Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, and testimony reveal that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Boswell v.*

Lyon, (1980) Ind.App., 401 N.E.2d 735; Huntington Mutual Insurance Company v. Walker, (1979) Ind.App., 392 N.E.2d 1182; Ind.Rules of Civil Procedure, Trial Rule 56(C). A fact is material if it tends to facilitate the resolution of any issue. Stuteville v. Downing, (1979) Ind.App., 391 N.E.2d 629. In deciding whether such a factual issue exists, the court must accept as true all facts alleged by the nonmoving party and resolve all doubts in his favor. All reasonable inferences must also be resolved in favor of the nonmoving party. Boswell, supra; Huntington, supra. If the facts give rise to conflicting inferences which could affect the result, summary judgment is inappropriate. Carrell v. Ellingwood, (1981) Ind.App., 423 N.E.2d 630. On review we must determine whether there is any material factual issue and whether the law has been applied correctly. Ang v. Hospital Corporation of America, (1979) Ind.App., 395 N.E.2d 441.

## Issue I. Ambiguity of guaranty

Loudermilk asserts that the scope of his liability was not clearly described by the guaranty. Therefore, the instrument is ambiguous, and its meaning is a question for the jury. Loudermilk states that when the guaranty, sales agreement, promissory note, and pledge agreement are considered together, it appears that certain remedies and obligations conflict. Specifically, the promissory notes and the pledge and sale agreements limit Pitterich's liability to the return of the collateral (Fleetwood stock) while the guaranty provides a further remedy, that is, Loudermilk's unconditional and primary guarantee of payment of the note "in accordance with the terms of the promissory note." Loudermilk also asserts that the court did consider extrinsic evidence offered by Casey and Weintraub, but failed to consider Loudermilk's affidavit. Loudermilk says that the court improperly weighed the evidence while purporting to find that the facts were undisputed.

█ The extent of a guarantor's liability is determined by the terms of his contract. Hamilton v. Meiks, (1936) 210 Ind. 610, 4 N.E.2d 536; Crouch and Son v. Par-

ker, (1919) 188 Ind. 660, 125 N.E. 453; Orange-Co., Inc. v. Brown, (1979) Ind.App., 393 N.E.2d 192. The interpretation of a guaranty is governed by the same rules applicable to other contracts. American Fletcher National Bank & Trust Company v. Pavilion, Inc., (1982) Ind.App., 434 N.E.2d 896; Orange-Co., supra. In the absence of ambiguity, the construction of a guaranty is a question of law. Pavilion, supra; Huntington, supra; House v. Lesow, (1975) 167 Ind.App. 449, 389 N.E.2d 86. The court will construe the guaranty so as to give effect to the intentions of the parties, which it ascertains from the language of the contract in the light of the surrounding circumstances. The guaranty and any other contemporaneous written agreements it incorporates are construed together in order to determine the parties' intentions. Pavilion, supra; Boswell, supra; Orange-Co., supra; Huntington, supra. The words of the contract are given their ordinary meaning. Orange-Co., supra; Huntington, supra. The terms of the guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. Orange-Co., supra; House, supra. If the court finds that any term is ambiguous, then the parties may introduce extrinsic evidence of its meaning, and the interpretation of that term becomes a question of fact. A word or a phrase is ambiguous if reasonable people could differ as to its meaning. Boswell, supra; House, supra.

█ In the case at bar, there are four agreements—the guaranties, promissory notes, sale agreement, and pledge agreement—which refer to each other and bear the same date of execution. Loudermilk correctly asserts that these should be construed as a single contract. See Pavilion, supra; Orange-Co., supra. However, the conflict he refers to is a superficial one which is easily resolved by a reading of the entire guaranty and sale agreements.

The guaranties state that they have been made in order to induce Casey and Weintraub to execute the sale agreement. Al-

though promissory notes were given to all the shareholders under the terms of the sale agreement, only Casey and Weintraub received guaranties. Therefore, the sale agreement and pledge agreement signed by all twelve shareholders, and the promissory notes do not mention the guaranties.

■ The trial court could have concluded that the guaranties modified the rest of the contract as to Casey and Weintraub to the extent ·that the terms of the other agreements conflict with the guaranties. Any other interpretation would make the guaranties meaningless and relieve Loudermilk of an obligation fairly within their terms. In interpreting a contract the court must read it as a whole and give effect to all of its provisions if possible. *House, supra; Pierce v. Yochum,* (1975) 164 Ind.App. 443, 330 N.E.2d 102. The plain meaning of the guaranties is that Loudermilk agreed to assume personal liability, although Pitterich did not, and the trial court so decided. We see no ambiguity in the contract.

Loudermilk's contention that the court resolved the alleged ambiguity in the contract by using extrinsic evidence from affidavits submitted by Casey and Weintraub is unsupported. The trial court specifically concluded that the guaranties were clear and unambiguous.· Examination of the findings of fact indicates that the findings directly relating to the ambiguity issue, findings 1 through 3, contain only facts found in the agreements themselves, which provide a thorough description of the transaction. Finding 4, which states the amount owing to Casey and Weintraub under the contract, is undisputed. We believe the findings are sufficient to support the conclusions of law, and Loudermilk does not argue otherwise. We conclude that there is no indication that the court resorted to any evidence outside the contract in deciding the ambiguity issue.

*Issue II. Scope of guarantor's liability*

■ Loudermilk contends that the court did not apply the law correctly in its conclusion that Loudermilk assumed personal liability although Pitterich did not. He argues that the liability of a guarantor is measured by the liability of the principal, citing *Northern Indiana Steel Supply Company, Inc. v. Chrisman,* (1965) 139 Ind.App. 27, 204 N.E.2d 668; and *Hamilton, supra.* We agree that this is the general rule governing the scope of a guarantor's liability. However, it is also the rule that the guarantor's contract exactly as it is made is the measure of his liability. *Hamilton, supra; Crouch, supra; Orange-Co., supra.* The liability of a guarantor may exceed the principal's if the contract so provides. *Smith v. Rogers,* (1860) 14 Ind. 224. In the case at bar, the guaranty provided: "Loudermilk unconditionally and primarily guarantees the payment of the promissory note." The guaranty, unlike the promissory note, did not purport to limit liability. The trial court's conclusion that Loudermilk was personally liable while Pitterich was not is correct.

*Issues III, IV, and V. Affirmative defenses*

Loudermilk argues that his affidavit created issues of material fact as to his three affirmative defenses, consideration, release, and payment.

*Consideration*

The affidavit states: "The affirmative defense of failure of consideration was asserted on the grounds that Affiant received absolutely nothing from the Plaintiffs in exchange for the execution of the guaranty agreement. Neither did Affiant benefit by virtue of Plaintiffs entering into the Sale Agreement with Pitterich." We do not agree that this statement raises any factual issue precluding summary judgment. The undisputed facts demonstrate consideration as a matter of law.

■ Consideration may take the form of a detriment to the promisee as well as a benefit to the promisor. *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.,* (1978) Ind.App., 372 N.E.2d 742. If a guaranty is made at the time of the contract to which it relates, so as to constitute part of the consideration for the contract, sufficient consideration exists. *Davis v.*

*B.C.L. Enterprises, Inc.,* (1980) Ind.App., 406 N.E.2d 1204; *Singer Manufacturing Company v. Forsyth,* (1886) 108 Ind. 334, 9 N.E. 372; *Bridges v. Blake,* (1886) 106 Ind. 332, 6 N.E. 833. For instance, where the guaranty induces the promisee to execute the main contract with the principal, there is consideration. *See Davis, supra.* It is not necessary for the guarantor to derive any benefit from the principal contract or the guaranty. Stearns, Law of Suretyship (5th Ed. 1951) § 4.9.

■ Clearly the statements in the affidavit create no factual issue in this regard. Loudermilk admits in his affidavit that the other documents were executed contemporaneously with the guaranty, and all the contracts bear the same date of execution. The guaranty purports to induce Casey and Weintraub to execute the Sale Agreement. We find this consideration sufficient.

*Release*

Loudermilk affirms:

"The affirmative defense of release was asserted on the grounds that Plaintiffs were aware of and consented [2] to the sale of A.C.E. Freight, Inc., operating rights to Kroblin Transportation Systems, Inc. Plaintiff's consent was necessary to effectuate the sale. The operating rights of A.C.E. Freight, Inc., was its only substantial asset of that corporation and the only asset of Fleetwood was the outstanding stock of A.C.E. Freight, Inc. The sale of these operating rights rendered the stock of both corporations worthless. By consenting to the sale, the Plaintiffs, by their actions, released Pitterich and Affiant in favor of the new obligations of Kroblin Transportation Systems, Inc."

■ Indiana Rules of Procedure, Trial Rule 56(E) provides that when affidavits are used to support or oppose a motion for summary judgment, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence,

and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A court considering a motion for summary judgment should disregard any inadmissible statements in the supporting or opposing affidavits. *Coghill v. Badger,* (1982) Ind.App., 430 N.E.2d 405. The rule that all doubts are resolved in favor of the non-moving party does not alter the requirements of T.R. 56(E). *Coghill, supra.* Conclusory facts, and conclusions of law cannot be used to support or oppose summary judgment. *Coghill, supra; Podgorny v. Great Central Insurance Company,* (1974) 160 Ind.App. 244, 311 N.E.2d 640. Inadmissible hearsay is likewise insufficient to show a genuine issue of material fact. *Newell v. Standard Land Corporation,* (1973) 156 Ind.App. 597, 297 N.E.2d 842.

■ The statements pertaining to the release defense in Loudermilk's affidavit consist entirely of legal conclusions and apparent hearsay which the court was required to disregard. Near the bottom of the third paragraph, the affidavit states, "Subsequent to November 16, 1976, Affiant has had no contact with Pitterich and was not aware of the status of the contract between Pitterich and the remaining stockholders of Fleetwood." In effect Loudermilk disclaims personal knowledge of the status of the sale agreement between the shareholders and Pitterich and then attests that those shareholders released Pitterich from his obligations under that agreement by consenting to the sale. The source of Loudermilk's knowledge is not apparent. A written release or consent is not attached as an exhibit to the affidavit. However, the sale agreement states, "Whenever and in all cases where the consent of sellers is required in this agreement, the Buyer may rely on the *written consent* of Charles F. Rodgers or A. David Millner, agents, on behalf of sellers and acting pursuant to Sellers' instructions." Furthermore, Loudermilk's statement that Casey's and Wein-

**2.** The court found that, "Plaintiff's consent was neither sought nor obtained in connection with such agreement." This finding is disputed.

However, we do not consider this a material fact for the reasons indicated in this discussion.

traub's consents were required is a legal conclusion which is not supported by the sale and pledge agreements or any other evidence. The sale agreement provides,

"6.6 In the event Buyer should sell all or a portion of the operating rights of A.C.E. directly or indirectly, the Sellers shall have the right to accelerate the then balance of the purchase price up to an amount equal to the difference between the proceeds of the sale of the operating authority and any monies paid to GLX and/or E.C. McCormick pursuant to Paragraph 26(d) of the 'Offer to Purchase Agreement' dated January 4, 1971 between Fleetwood Investment and GLX. An appropriate provision implementing the foregoing shall be included in the installment notes."

However, no provision is made to require consent to sell. The pledge agreement gives Loudermilk, "all rights with respect to the ownership of the Pledged Stock, including but not limited to the rights to vote the same and to give consents, waivers, and ratifications with respect thereto, and to receive all cash dividends, distributions and all interest thereon." It appears from these agreements that Pitterich had the right to sell the operating rights without consent and that the sale was merely an event of default giving Casey and Weintraub the right to accelerate the debt. Neither Loudermilk's affidavit nor the agreements themselves provide any evidence to the contrary.

██ Finally, even if consent had been given, nothing in the affidavit supports the conclusory statement that the consent amounted to a release of Pitterich. It is true that a release of the principal or any other change in his contract releases the guarantor. *Lutz v. Frick Company,* (1962) 242 Ind. 599, 181 N.E.2d 14; *Northern Indiana Steel Supply Company, supra; Crouch, supra.* However, the terms of the sale agreement which formed a part of Loudermilk's contract contemplated the possibility of a sale of the operating rights. Loudermilk was on notice that such a sale was an event of default which could trigger his liability.

We must conclude that Loudermilk raised no factual issue concerning release.

*Payment*

In his affidavit and his brief, Loudermilk argues that Casey's and Weintraub's sole remedy in case of default was the return of the Fleetwood stock, a remedy they have not pursued. Therefore, the court erred in concluding that he was in default under the guaranties.

He attempts to support this argument with the following language from the pledge agreement.

"2. Upon the occurrence of an uncured default pursuant to the terms of subparagraph 1.3(a) of the Contract, all sums due to Seller pursuant to subparagraph 1.2 of the Contract shall be immediately due and payable, and the Seller shall give notice to the Purchaser and the Escrow Agent stating that a default has occurred and that it has the rights set forth in paragraph 3 hereof with respect to the Pledged Stock (the 'Claim Notice'). If the Purchaser shall object to the delivery of the Pledged Stock to the Seller on or before five (5) days after the giving of the Claim Notice, the Purchaser shall give notice (the 'Dispute Notice') to the Seller and the Escrow Agent setting forth the grounds for such objection."

He further argues that Casey and Weintraub were required to resort to the collateral before attempting to recover from him.

Our resolution of the ambiguity issue disposes of the sole remedy argument. Furthermore, it is obvious that the quoted passage from the pledge agreement merely prescribes the procedure the shareholders must follow to exercise their right to the return of the stock in the event of default. The contract does not require Casey and Weintraub to exercise their rights.

██ We see no merit in Loudermilk's second argument that the contract requires Casey and Weintraub to resort to the collateral before attempting to collect from him. The sale agreement, pledge agreement, and notes are silent on this issue. Because only Casey and Weintraub obtained guaranties,

nothing in these other agreements illuminates the intended relationship between the two forms of security. Loudermilk has not brought to our attention any language in the guaranties requiring prior resort to the collateral, and we have found none. The trial court correctly concluded that Loudermilk is in default and that prior resort to the collateral is not required.

*Issue VI. Attorneys' fees*

Loudermilk contends that the trial court's award of $4,000 in attorneys' fees to Casey and Weintraub was contrary to the law and the evidence. Under the terms of his promissory note, Loudermilk promised to pay "all attorneys' fees incurred by the Payee in enforcing any right or remedy hereunder." Loudermilk raises the following arguments: (1) Part of the award represented payment for unspecified future services; (2) attorney Jerome S. Zurkow, who charged $1,500 for his services, was not an attorney of record and was a business partner of Casey and Weintraub; and (3) the fee for local counsel John M. Howard about which no evidence was offered could not reasonably have been large enough to account for the discrepancy between the fees proven by attorney Theodore J. Nowacki, totaling $1,881.28, and the total award.

■ "The legal profession stands on the same plane with other professions in litigation involving professional fees. Proof is required of the nature of the services rendered and the reasonableness of the charge made." *Lystarczyk v. Smits,* (1982) Ind. App., 435 N.E.2d 1011, 1017. Where a promissory note merely provides for attorneys' fees without giving a dollar amount, the court may not add a sum for attorneys' fees to the amount otherwise due without evidence of the nature of the services rendered and their value. *Leibowitz v. Moore,* (1982) Ind.App., 436 N.E.2d 899; *Parrish v. Terre Haute Savings Bank,* (1982) Ind.App., 431 N.E.2d 132. Judicial notice of the reasonableness of attorneys' fees is permitted in certain routine actions, such as dissolutions of marriage in which modest fees are sought. *See U.S. Aircraft Financing, Inc.*

*v. Jankovich,* (1980) Ind.App., 407 N.E.2d 287. However, in *Leibowitz* and *Parrish* this court refused to include actions on promissory notes in this "routine" category, even when the requested fees appeared modest as in *Parrish* ($5,000, *i.e.* 6% of the damages awarded). In *Parrish* the only evidence of attorneys' fees was a bank official's testimony as to what the attorney said the charge would be. The *Parrish* court followed *U.S. Aircraft,* which advised litigants and courts to refer to the *Code of Professional Responsibility,* DR 2–106(B) in determining the evidence to be presented at trial or deciding the amount to be awarded.

In the case at bar, there was no evidence of the value of Howard's services as local counsel. Zurkow's name appears only on the pleadings and his affidavit, which states in part "Plaintiffs have incurred an obligation to Affiant for Affiant's legal services in enforcing Plaintiffs' rights and remedies to collect the amounts claimed in the within action, and Affiant has billed Plaintiffs therefor in the amount of Fifteen Hundred Dollars ($1,500.00)." Zurkow provided no information about the nature of his services or the time he expended. Nowacki's affidavit is more specific. It states that his firm devoted 25.70 office hours to the action and earned fees totaling $1,761. Out-of-pocket expenses are separately enumerated and total $120.28. However, Nowacki does not specifically state what services his firm performed. In addition, he claimed $1,000 "for services performed and to be performed subsequent to March 9, 1981," without elaborating further about the nature of those services or the amount of time to be expended. There was no evidence of the customary charges for cases of this kind by affidavit or testimony.

Without more information about the services provided by the attorneys and the customary charges for such services, the court cannot decide what charges are reasonable. Where attorneys have performed services not reflected by the record of the proceedings and the documents on file, counsel must inform the court of what those services are. In addition, the guide-

lines provided by DR 2–106 may be used, when applicable, to aid the court in determining whether the fee charged is reasonable.

We conclude that the evidence does not support the award of attorneys' fees. Accordingly, this case is reversed as to the award of attorneys' fees and remanded for further proceedings consistent with this opinion. In all other respects the decision of the trial court is affirmed.

Affirmed in part; reversed and remanded in part.

RATLIFF, P.J., and ROBERTSON, J., concur.